NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARGARET M. REED,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-1628

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-13-1557-B-1.

---

Decided:  February 7, 2024

---

MARGARET MICHELLE REED, Jupiter, FL, pro se.

VIJAYA SURAMPUDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, FRANKLIN E. WHITE, JR.

---

Before LOURIE, PROST, and REYNA, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* REYNA.

PER CURIAM.

Margaret Michelle Reed appeals from a decision of the Merit Systems Protection Board ("the Board") denying a request for relief in an Individual Right of Action ("IRA") appeal that asserted agency retaliatory action for alleged whistleblowing activity. *Reed v. Dep't of Veterans Affs.*, No. CH-1221-13-1557-B-1, 2023 WL 2213175 (M.S.P.B. Feb. 24, 2023), R.A. 78–92.[1]

For the following reasons, we *affirm*.

BACKGROUND

In 2009, Reed began working as a Human Resources Specialist at a Department of Veterans Affairs Medical Center. On January 12, 2012, she engaged in a verbal exchange with her supervisor, Jennifer Pardun, regarding Pardun's apparent refusal to answer a work-related question that Reed had raised several times over e-mail. On January 13, 2012, Pardun submitted a Report of Contact, accusing Reed of engaging in threatening and disrespectful behavior during the previous day's exchange. R.A. 96.

On February 13, 2012, the Assistant Chief of the Human Resources Management Service ("HRMS"), Rolanda Watkins, issued Reed an admonishment for disrespectful conduct based on Pardun's account of the January 12, 2012 incident. R.A. 93–95. Reed filed both an informal and a formal grievance challenging the factual basis of that admonishment. Both were denied. *See*, *e.g.*, R.A. 111–17; P.A. 253.[2]

---

[1]    "R.A." refers to the appendix filed with Respondent's brief.

[2]    "P.A." refers to the appendix filed with Petitioner's brief.

On June 22, 2012, Reed e-mailed the Medical Center Director, Glenn Costie, to inform him of what she believed was a futile grievance process. R.A. 118. In her e-mail, she averred that the allegations underlying her admonishment had been fabricated by Pardun in an attempt to secure an admonishment. *Id.* She also expressed that she had expected that the agency would have conducted further fact finding while investigating her formal grievance. *Id.* Her e-mail also included a request to meet with Director Costie to discuss the matter. *Id.*

On July 26, 2012, Reed sent an additional e-mail to Director Costie as well as HRMS Chief Jerry Erwin outlining her concerns regarding the grievance process. R.A. 120. In particular, she wrote that HRMS management had ignored the factual disputes that she had raised and had failed to make additional factual inquiries as required by agency policy. *Id.* She further contended that that agency failure constituted a violation of her due process rights. *Id.*

On August 3, 2012, a meeting was held by Reed's department managers, including HRMS Chief Erwin and HRMS Assistant Chief Watkins, announcing that any employee who contacted the Director's office without approval from his or her management team would face disciplinary action. *See* P.A. 174.

On August 29, 2012, Reed met with Director Costie and contended that her admonishment was an unwarranted personnel action taken without due process. *See* P.A. 175–77. She also asserted that, in retaliation for her filing the grievances, the Chief and Assistant Chief of HRMS failed to follow various agency rules. *Id.*

Somewhat contemporaneously, on August 15, August 24, and October 1, 2012, three agency employees filed reports suggesting that Reed was unhelpful or rude in performing her duties of giving advice on various personnel matters. *See* R.A. 130–31 (reporting that she was rude on a phone call); *id.* at 128 (reporting that she spoke with a

"snippy tone" on a phone call and sighed on a voice mail); *id.* at 125–26 (asserting frustration that she did not provide a citation to support an answer that she had given, while acknowledging that she was still helpful and that the complainant's frustrations may lie in the procedural aspects of his job rather than with Reed). Reed provided responses to each of those reports, providing context and her own experiences, as well as evidence supporting her continued attempts to be helpful and to provide beneficial service. *See* P.A. 16–22 (August 17, 2012 response to the August 15, 2012 complaint), 33–35 (August 30, 2012 response to the August 24, 2012 complaint), 41–44 (October 2, 2012 response to the October 1, 2012 complaint).

On October 4, 2012, HRMS Chief Erwin proposed suspending Reed for three days. P.A. at 4–7. Soon thereafter, he issued a decision effecting that suspension. P.A. 8–9 (asserting that "the sustained charges against [Reed were] of such gravity that mitigation of the proposed penalty is not warranted"). In the notice of suspension, Erwin noted that his decision involved consideration of the three recent reports on Reed's conduct as well as Reed's past disciplinary record, which included the February 13, 2012 admonishment that remained in her personnel file.[3] *Id.*

In a November 7, 2012 complaint to the Office of Special Counsel ("OSC"), Reed asserted that the suspension was evidence of agency retaliation for whistleblowing activity in violation of 5 U.S.C. § 2302(b)(8). P.A. 62–72. On May 16, 2013, the OSC issued a preliminary decision to close the file without taking corrective action in view of a lack of "evidence that any management officials

---

[3]    Although agency procedures allow for such an admonishment to be removed from an employee's personnel file six months after issuance and Reed timely requested such a removal, HRMS Assistant Chief Watkins elected not to do so. *See* R.A. 67 n.3, 93–95; P.A. 168–69, ¶¶ 6–7.

responsible for the personnel actions suffered any adverse impact as a result of [Reed's] meeting with the Director." R.A. 157–58. Reed responded, noting that the cited rationale was not the relevant legal standard, *id.* at 159–62, but the OSC nevertheless closed its file on June 7, 2013 without taking corrective action. *Id.* at 163–64.

Reed then filed an IRA appeal under the Whistleblower Protection Act ("WPA") on July 29, 2013. R.A. 1. In a March 31, 2014 initial decision, an administrative judge ("AJ") held that she had not met her burden to establish jurisdiction because she had failed to nonfrivolously allege that she had made protected disclosures under § 2302(b)(8). R.A. 1–16. But on November 25, 2014, the Board modified that initial decision, finding that she had made a nonfrivolous allegation of at least one protected disclosure in the form of her OSC complaint, and that Reed should also be given an opportunity to argue on remand that the agency perceived her to be a whistleblower even in the absence of a protected disclosure. *Id.* at 21–29. The Board subsequently remanded the case for further adjudication. *Id.* at 29. However, on January 6, 2015, the Board vacated its November 25, 2014 decision and instead affirmed the March 31, 2014 initial decision that found a lack of jurisdiction. *Id.* at 32–47.

Reed then appealed to this court. While that appeal was pending, the Board requested that we vacate its January 6, 2015 decision in light of its new determination that Reed had, in fact, made a nonfrivolous allegation that each of her June 22, July 26, and August 29, 2012 disclosures were protected and were contributing factors in various personnel actions. R.A. 48–50. At the Board's request, its decision was vacated by this court on June 23, 2015 and the case was remanded for further adjudication. *Id.* The Board subsequently issued its own remand order on September 25, 2015, instructing the AJ to issue a new initial decision evaluating whether or not Reed's June 22, July 26, and August 29, 2012 disclosures were protected under

§ 2302(b)(8). R.A. 51–56. If so, the AJ was to evaluate whether or not those disclosures contributed to the alleged retaliatory actions consisting of (1) discipline threatened for meeting with the Director; (2) the August 29, 2012 decision not to remove Reed's admonishment from her personnel file; (3) the 3-day suspension proposed on October 4, 2012; and (4) the 3-day suspension issued on October 29, 2012. *Id.*

On remand, the AJ found that none of the disclosures were protected because Reed could not have reasonably believed that her admonishment was an abuse of authority or that an agency rule had been violated in the course of issuing her admonishment or handling her subsequent grievances. R.A. 57–77. Reed filed a petition for review, which was denied. The remand initial decision thus became the Board's final decision on February 23, 2023. R.A. 78–92. Reed appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Reed contends that the Board erred in holding that she failed to establish that any of the June 22, July 26, or August 29, 2012 disclosures was protected under § 2302(b)(8). We review the Board's legal determinations *de novo* and its underlying findings of fact for substantial evidence. *Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). A court will not overturn an agency decision if it is not contrary to law and was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Lab. Rel. Bd.*, 305 U.S. 197, 229 (1938).

Under the WPA, any supervisory employee with the authority to take, recommend, or approve a personnel action may not take, or threaten to take, such an action because of an employee's disclosure that that employee "reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross

waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety," assuming the disclosure is not specifically prohibited by law or otherwise "specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs." 5 U.S.C. § 2302(b)(8)(A). An employee may be protected from retaliation under the WPA even if her reasonable belief of agency wrongdoing was mistaken. *See Drake v. Agency for Int'l Dev.*, 543 F.3d 1377, 1382 (Fed. Cir. 2008).

Here, the four allegedly prohibited personnel practices identified by the Board in its September 25, 2015 remand order all fall within the umbrella of disciplinary or corrective actions under 5 U.S.C. § 2302(a)(2)(A)(iii). *See* R.A. 55–56. There appears to be no dispute that those four personnel practices were performed at the behest of agency employees with the authority to take, recommend, or approve personnel actions.

Reed does not allege that her disclosures evidence a gross waste of funds or a substantial and specific danger to public health or safety. And, although the AJ, Board, and government on appeal each discussed a lack of a showing of gross mismanagement, Reed has never asserted gross mismanagement. She does allege, however, that each of her disclosures demonstrated that she reasonably believed that the agency (i) violated a law, rule, or regulation under 5 U.S.C. § 2302(b)(8)(A)(i) and (ii) committed an abuse of authority under 5 U.S.C. § 2302(b)(8)(A)(ii). We address both in turn below.

I.

We turn first to protection under 5 U.S.C. § 2302(b)(8)(A)(i). Reed asserts that the agency violated its grievance policies, which she asserts amounts to the violation of a rule. She does not appear to assert that the agency violated a law or regulation.

We begin with her first disclosure, the June 22, 2012 e-mail bringing concerns regarding an allegedly futile grievance process to the attention of the Medical Center Director. The Board determined that that e-mail could not have disclosed such a violation because she "failed to show that the agency was required by its own rules to conduct any further fact finding regarding her grievance or to allow her to present her grievance orally, and the record did not reflect that the agency had denied her any required procedural protections." R.A. 84.

The proper test for determining if an employee made a protected disclosure rests on whether or not that employee had a reasonable belief that her disclosures revealed misconduct prohibited under the WPA. *See* 5 U.S.C. § 2302(b)(8)(A). That inquiry involves evaluating whether or not a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidence wrongdoing as defined by the WPA. *See Drake*, 543 F.3d at 1382; *see Huffman v. Office of Pers. Mgmt.*, 92 M.S.P.R. 429, 433 (2002) ("To establish that he held such a reasonable belief, an appellant need not prove that the condition disclosed actually established one or more of the listed categories of wrongdoing, but he must show that the matter disclosed was one which a reasonable person in his position would believe evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8).").

The analysis therefore turns not on Reed's ability to establish that the agency violated its own rules, but whether or not she reasonably believed that it had.

We agree with the Board that the June 22, 2012 e-mail did not evidence a belief that a rule had been violated. *See* P.A. 234. Rather, it served to bring the nature of the existing grievance process to the attention of the Medical Center Director. *Id.* Although Reed did note that she "thought that an additional fact finding would occur with employees

who could shed light on the fact that the scenario depicted within the admonishment never happened" and that "no one did an additional fact-finding," she did not assert that failure to perform additional fact-finding was a rule violation. The June 22, 2012 e-mail therefore does not constitute a protected disclosure under § 2302(b)(8)(A)(i).

The July 26, 2012 e-mail did not merely raise a concern with a futile grievance process. Rather, Reed asserted that "in order to afford me any real due process, an additional inquiry would have had to occur. I believe this was required as the policy is written." R.A. 242. Nevertheless, we do not find that such a cursory statement sufficiently alleges a rule violation, and for that reason do not find the July 26, 2012 disclosure to be a protected disclosure under the WPA.

The limited evidence describing what was asserted at Reed's August 29, 2012 meeting with the Medical Center also appears insufficient to overturn the Board's conclusion that those disclosures were not protected. For example, a statement signed by an attorney who accompanied Reed to the meeting describes how Reed "reiterated many of the same points that were in her grievance." R.A. 169. However, the attorney's statement does not sufficiently explain what those points were. The statement seems to indicate that Reed asserted that the agency deviated from standard procedures in handling her grievances, *see* R.A. 169, but that is not the same as alleging that those deviations were actual rule violations. Similarly, the attorney testified that he "reviewed the agency's grievance policy and found that [Reed] w[as] afforded none of the procedures that would have amounted to a substantive process for review." *See* R.A. 168. But there does not appear to be a sufficiently pled allegation that such deviations were rule violations.

In view of the above, there is insufficient evidence before us to overturn the Board's determination that none of the three disclosures constitutes a protected disclosure

under § 2302(b)(8)(A)(i).

## II.

We next turn to Reed's allegations of an abuse of authority under 5 U.S.C. § 2302(b)(8)(A)(ii). In adopting the AJ's remand initial decision, the Board agreed with the AJ's holding that all three disclosures lacked a reasonably believed assertion of an abuse of authority. *See* R.A. 83–84. In particular, the AJ found that the evidence most favorable to Reed describing the January 12, 2012 exchange with Pardun described her as being involved "in a loud, non-productive exchange" that involved acting with disrespect toward her supervisor. R.A. 64–66. The AJ reasoned that, because her own testimony could be viewed as supporting a finding that she was disrespectful toward her supervisor, Reed deserved the admonishment, and she therefore could not have reasonably believed that the issuance of the admonishment constituted an abuse of authority. *Id.* The Board agreed.

"Although § 2302 does not define abuse of authority, related whistleblower-protection statutes" define it as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned." *Smolinski v. Merit Sys. Prot. Bd.*, 23 F.4th 1345, 1352 (Fed. Cir. 2022).

The foundational question that Reed presents at the heart of her appeal is a factual one: did she engage in the January 12, 2012 altercation as Pardun alleged. The AJ and Board found that she did. R.A. 84–85. Reed appears to have acknowledged that evidence in the record supports the conclusion that she acted disrespectfully toward her supervisor. She has also acknowledged that if she did engage in disrespectful conduct, it would have been reasonable for her to be disciplined. R.A. 118. But Reed challenges that evidence in the record, asserting that it was fabricated to support an unjust admonishment. She alleges that a complaint of fabricated evidence appears in each of the June

22, July 26, and August 29, 2012 disclosures and that establishes her charge of an abuse of authority, not simply the fact that she was admonished.

But the Board found (1) that Reed's "insistence that the agency fabricated the evidence in support of her admonishment is not supported by the record," (2) that her own testimony regarding the January 12, 2012 incident supported the admonishment, and (3) that even her most favorable evidence corroborated the agency's version of the events on January 12, 2012. We review such factual findings for substantial evidence. *Welshans*, 550 F.3d at 1102.

There is some evidence to support that the report submitted by Pardun was embellished, as several employees filed statements testifying to that effect. *See* R.A. 58–59 (employee reports describing Pardun's account as "embellished" and "not accurate"); *id.* ("the exchange I heard does not support" Pardun's accounting of events); *id.* at 60 ("I do not believe that the incident in the admonishment [occurred] as reported."); *id.* (the incident had not risen "to the level of intensity reported"); *id.* ("not believ[ing]" Pardun's account).

However, even if Reed reasonably believed, and some evidence in the record supports that, Pardun's Report of Contact unfairly characterized their interaction, such behavior is not an abuse of authority under the whistleblowing statutes. Our case law has emphasized that routine disputes between an employee and a supervisor are not encompassed by the WPA. *Langer v. Dep't of Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001). The facts of this case reflect only an employee-supervisor dispute. We therefore find that none of the June 22, July 26, and August 29, 2012 disclosures asserting abuses of authority was protected under 5 U.S.C. § 2302(b)(8)(A)(ii).

## III.

Because we find none of the three disclosures to be

protected under § 2302(b)(8)(A), we need not assess whether the disclosures contributed to allegedly retaliatory personnel actions.

## CONCLUSION

We have considered Reed's remaining arguments and do not find them persuasive. For the foregoing reasons, we *affirm* the Board's determination that none of the June 22, July 26, and August 29, 2012 disclosures was protected under 5 U.S.C. § 2302(b)(8).

## **AFFIRMED**

## COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MARGARET M. REED,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2023-1628

_____

Petition for review of the Merit Systems Protection Board in No. CH-1221-13-1557-B-1.

_____

REYNA, *Circuit Judge*, dissenting.

This appeal comes upon a curious path, the facts and history of which are aptly laid out in the majority opinion. The underlying case has involved several remands by the Board, a remand from this court, and two decisions by the ALJ, all addressing the "foundational question" that the majority declares is "at the heart of [Reed's] appeal": "did she engage in the January 12, 2012 altercation as Pardun alleged." Maj. Op. 10. This is a question of fact that we review for substantial evidence. *Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008).

The majority concludes that Reed engaged in an altercation as alleged by her supervisor, Pardun. Based on that

finding, the majority asserts that this case involves a routine "employee-supervisor dispute." Maj. Op. 11. The majority affirms, in part, on the basis that Reed fails to allege an abuse of authority under 5 U.S.C. § 2302(b)(8)(A)(ii) because the Whistleblower Protection Act ("WPA") does not apply to routine employee-supervisor disputes. *Id.*

But this case is not a routine employee-supervisor dispute. This case is about an inaccurate, embellished report filed by supervisor Pardun against Reed that formed the basis for an admonishment, later followed by suspension.

The January 12, 2012 incident between Reed and her supervisor Pardun was witnessed by Reed's co-workers. What those co-workers said speaks directly to the foundational question of whether the altercation was "as Pardun alleged." Thus, while the incident report prepared by Pardun relays her side of the altercation, the overwhelming eyewitness evidence establishes that the characterizations in the incident report were false, or "embellished." Consider that all but one employee who witnessed the exchange either contradicted Pardun's incident report or provided a perspective that rendered it suspect, if not outright fabricated. *See* P.A. 58–59 (describing Pardun's account as "embellished" and "not accurate"); *id.* (stating "the exchange I heard does not support" Pardun's accounting of events); *id.* at 60 (stating "I do not believe that the incident in the admonishment [occurred] as reported."); *id.* (stating the incident had not risen "to the level of intensity reported"); *id.* ("not believ[ing]" Pardun's account and allegations of potential violence).

One witness related that it was the supervisor, Pardun, that was "the person [they] heard using an inappropriate tone with an elevated vocal range" during the January 12, 2012 incident. P.A. 58. The witness statement clearly identifies the supervisor as the inappropriate actor: "Ms. Pardun continued to engage in an inappropriate verbal manner with Michelle Reed," and, "instead of diffusing the

situation[,] [was] elevat[ing] the situation to the point [that] Ms. Pardun was raising her voice for the entire area to hear her interaction with Ms. Reed." P.A. 58. The witness continued, explaining that "[i]t appeared [Pardun] was actually trying to provoke/bait Ms. Reed" and that "[i]t was obvious from Ms. Reed's comments that she was only trying to obtain Ms. Pardun's full attention about something." P.A. 58; *see also* R.A. 98 (identifying Pardun as the aggressor that escalated the exchange). Only one co-worker colleague lent limited support to Pardun's version of events. R.A. 101.

This case is also not a routine employee-supervisor dispute because senior officials above Reed were also involved. After the January incident, Reed was admonished by the Assistant Chief of the Human Resources Management Service ("HRMS"), Rolanda Watkins, for disrespectful conduct based on the incident report. R.A. 93–95. Once it was placed in Reed's employment file, the admonishment became an adverse personnel action. *See* § 2302(a)(2) (defining personnel actions). Subsequently, based on the admonishment, Reed was suspended—another adverse personnel action. P.A. 4–9. During this process, Reed alleged to the Director of the Department of Veterans Affairs Medical Center, Mr. Alex Costie, that she was deprived of her due process rights because factual disputes that she had raised were ignored and the agency had failed to make additional factual inquiries. R.A. 118–20. Importantly, all the individuals involved, other than Reed, are senior level officials in the Department of Veterans Affairs Medical Center, such as Director Costie, or those in the human resources department, including HRMS Chief Jerry Erwin, HRMS Assistant Chief Rolanda Watkins, and Pardun. It seems to me that conduct by such officials in levying personnel actions on the basis of inaccurate and embellished information would support a reasonable basis of an abuse of authority.

Section 2302 of the WPA does not define abuse of authority. Some statutes related to whistleblower-type protection define it as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned." *E.g.*, 41 U.S.C. § 4712(g)(1) (whistleblower protections for employees of federal contractors). The Board has maintained that abuse of authority occurs when there is an "arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *Smolinski v. Merit Sys. Prot. Bd.*, 23 F.4th 1345, 1351 (Fed. Cir. 2022) (citing *Wheeler v. Dep't of Veterans Affs.*, 88 M.S.P.R. 236, 241 (2001)). In *Smolinski*, applying the definition of an abuse of authority from related whistleblower statutes, we reasoned that sexual harassment and bullying by a superior officer would be an abuse of authority as this conduct is inconsistent with the mission of the army. *Id.* at 1352. Here, the evidence points to an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned.

Our substantial evidence standard of review considers the entire record, not just bits and pieces. *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987) (explaining the substantial evidence standard requires evaluation of the "evidence on the record as a whole"). The majority acknowledges that there is "some evidence to support that the report submitted by Pardun was embellished" and that Pardun "unfairly characterized" the altercation with Reed. Maj. Op. 11. But the majority's final perspective is too limited and fails to account for the entire record. The record evidence demonstrates arbitrary and capricious conduct by high-level officials, and that such conduct is inconsistent with the mission of the agency, recognizing that the primary individuals involved in this matter worked in the human resources department of the agency.

REED v. DVA                                                          5

Based on the foregoing, I would find that substantial evidence supports that Reed alleged a reasonable belief that the June 22, July 26, and August 29, 2012 disclosures each were protected disclosures under § 2302(b)(8)(A)(ii). I respectfully dissent.