## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ADDISON DAVID AULT,<br> Appellant, | DOCKET NUMBER<br>DC-0752-20-0610-I-1 |
| v. | |
| DEPARTMENT OF COMMERCE,<br> Agency. | DATE: April 15, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Addison David Ault</u>, Pennington, New Jersey, pro se.

<u>Chieko Clarke</u>, Esquire, and <u>William Horrigan</u>, Esquire, Alexandria, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which affirmed his removal under 5 U.S.C. chapter 43. For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the Washington Regional Office for further adjudication consistent

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

with *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

The appellant was a GS-14 Patent Examiner for the agency's Patent and Trademark Office. Initial Appeal File (IAF), Tab 1 at 1, Tab 4 at 22. The primary function of this position is to review patent applications and, based on the result of that review, draft an "office action" with respect to each application. IAF, Tab 28, Hearing Transcript (Tr.), Vol. 1 at 18-19 (testimony of a Quality Assurance Specialist). An office action is a written decision on an application and comes in three basic forms—final allowance, final rejection, and non-final notice and opportunity for the applicant to respond by modifying or supplementing an application that might otherwise be rejected. *Id.* at 19, 23-24 (testimony of the Quality Assurance Specialist). Each draft office action must be signed by an authorized official before it is issued to the applicant. *Id.* at 21 (testimony of the Quality Assurance Specialist). As a GS-14 Patent Examiner, the appellant had full signatory authority and was thus able to issue office actions independently and without any higher level of review. *Id.* at 21-24 (testimony of the Quality Assurance Specialist). It is expected that a GS-14 Patent Examiner be highly proficient at his job. *Id.* at 25 (testimony of the Quality Assurance Specialist).

The Patent Examiner performance plan contains three critical elements— Production, Quality, and Docket Management—as well as one non-critical element—Stakeholder Interaction. IAF, Tab 4 at 62-63, 73-83. Performance in each of these elements is rated on a five-tier scale, from Outstanding, to Commendable, to Fully Successful, to Marginal, to Unacceptable. *Id.* at 62-63. The appellant's performance year ran from October 1 through September 30 of each year. *Id.* at 45, 66.

The critical element of Quality is the only performance element at issue in this appeal. Quality is evaluated based on the rate at which the Patent Examiner's office actions contain errors—the lower the error rate, the higher the rating in this element. *Id.* at 77. Depending on its nature, the rate of error can fall into one of the following three categories: Category 1, Category 2, or Category 3.[2] *Id.* at 476-78. At issue in this appeal are alleged Category 3 errors, which pertain to a Patent Examiner's failure to "[p]roperly reject[] all rejectable claims in a final rejection; [or] properly allow[] all claims in an allowance." *Id.* at 478. An error rate of 7.5% or greater in any category will result in a Quality rating of Unacceptable. *Id.* at 77.

As a GS-14 Patent Examiner, the appellant's first-level supervisor was a Supervisory Patent Examiner (SPE).[3] Tr., Vol. 1 at 16 (testimony of SPE 1). SPEs are the officials primarily tasked with detecting errors in a Patent Examiner's work. *Id.* at 131-32 (testimony of SPE 2). Their review is typically done on a quarterly basis, during which period the SPE must thoroughly review at least one office action for each Patent Examiner under her supervision and check it for errors. IAF, Tab 4 at 446. In practice, the appellant's supervisors would review one or two random office actions per Patent Examiner per quarter, and if they found any errors in that initial sample, then and only then would they expand

---

[2] Generally, only one error will be charged per office action, even if the action contains multiple errors. However, both a Category 1 and Category 2 or 3 error may be charged in a single office action if the two errors are unrelated. In addition, Category 1 errors will not be charged unless the same error is repeated and training and mentoring have failed to correct the problem. IAF, Tab 4 at 77.

[3] During the time period at issue in this appeal, the appellant's former supervisor took another position at the agency and a new SPE replaced her in the appellant's chain of command. Tr., Vol. 1 at 15-16, 66-67 (testimony of SPE 1), 128, 130 (testimony of SPE 2). We refer to these individuals as SPE 1 and SPE 2, respectively.

their review to additional office actions.[4]  Tr. Vol 1 at 27-28, 77-78 (testimony of SPE 1), 160, 199 (testimony of SPE 2).

If a Patent Examiner disagrees with his SPE's error determination, he has the right to rebut that determination orally or in writing.  IAF, Tab 1 at 476.  If, after receiving the Patent Examiner's rebuttal, the SPE maintains that the error was properly assigned, the Patent Examiner may appeal the issue to the Technology Center Director.[5]  *Id.*

In any case, only "clear error" may be charged against a Patent Examiner's work.  *Id.* at 77.  A clear error is one that (1) does not reasonably comply with the standards identified by the agency, (2) could not have been permitted at the time and under the circumstances that the action was taken, and (3) is not an honest and legitimate difference of opinion as to what action should have been taken.  *Id.* As long as the action taken by the Patent Examiner is reasonable, it is free of clear error, even if his supervisor would have preferred a different approach.  *Id.*

For fiscal year 2018, the appellant earned a summary rating of Commendable, including a rating of Commendable in the Quality element.  *Id.* at 63-64.  Nevertheless, SPE 1, who was also the appellant's rating official, observed that the quality of his work had declined in the fourth quarter.  She determined that, out of the 26 office actions that the appellant submitted, 4 of them contained Category 3 errors, for an error rate of 15.38%, which was well in excess of Unacceptable.  *Id.* at 154.  Accordingly, on October 10, 2018, she issued the appellant an "oral warning," notifying him that if his performance in

---

[4] To give a rough idea of the total number of office actions that a GS-14 Patent Examiner could be expected to take in a given quarter, we note that the appellant in this case issued 26 office actions in the fourth quarter of fiscal year 2018, and 25 office actions in the first quarter of fiscal year 2019.  IAF, Tab 4 at 154, 293.

[5] A technology center is a division of the United States Patent and Trademark Office that processes patent applications falling under a particular field of science or engineering.  The technology center in which the appellant worked processed biotechnology patent applications.  Tr., Vol. 1 at 127-28 (testimony of SPE 2).

the Quality element was not at least Marginal for the period between October 28, 2018, and February 2, 2019, then he would be issued a "written warning."[6]

During the oral warning period, SPE 2 became the appellant's new supervisor, and at the close of the oral warning period, she determined that 4 of the 25 office actions that the appellant submitted contained Category 3 errors, for an error rate of 16%. IAF, Tab 4 at 293-300; Tr., Vol. 1 at 156, 158 (testimony of SPE 2). Finding that the appellant failed to demonstrate at least Marginal performance in the Quality element, she issued him a written warning, effective March 17, 2017. IAF, Tab 4 at 293-301. The written warning period constituted an "opportunity to demonstrate acceptable performance" under 5 C.F.R. § 432.103(d), commonly known as a performance improvement period, and ran until June 22, 2017. *Id.* The appellant completed the written warning period successfully, with an error rate of 4.16%, which was within the Outstanding performance range. *Id.* at 77, 343.

On July 17, 2019, SPE 2 notified the appellant of his successful completion of the written warning period, but she cautioned him of the need to maintain acceptable performance in the Quality element going forward. *Id.* at 343. Specifically, she notified him that his performance would continue to be monitored over 3 successive 12-week periods, ending March 14, 2020, and that if his performance in the Quality element fell below the Marginal level during any one of those periods, he could face reduction in grade or removal. *Id.* at 343-45.

The first 12-week evaluation period ran from July 21 through October 12, 2019, and the agency determined that, out of the 23 office actions that the appellant submitted during that time, 3 of them contained Category 3 errors, for an error rate of 13.03%, which was Unacceptable. *Id.* at 36-40. The agency proposed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43. *Id.* at 34-42. After the appellant responded, the agency issued a

---

[6] To account for approved leave that the appellant took during this time period, the agency subsequently extended the oral warning evaluation period to February 16, 2019. IAF, Tab 4 at 158, 160.

decision sustaining the charge and removing him effective April 16, 2020. *Id.* at 22-27.

The appellant filed a Board appeal, contesting the merits of the agency's action and raising affirmative defenses of whistleblower reprisal, retaliation for union activity, and violations of the First Amendment, the Fair Labor Standards Act (FLSA), and the Administrative Procedure Act (APA). IAF, Tab 1, Tab 14 at 2-3. After a hearing, the administrative judge issued an initial decision affirming the appellant's removal. IAF, Tab 36, Initial Decision (ID). She found that the agency established all the elements of its case, and that the appellant failed to prove any of his affirmative defenses. ID at 9-38.

The appellant has filed a petition for review, contesting the validity of his performance standards and disputing the administrative judge's analysis of his affirmative defenses. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

**ANALYSIS**

The appeal must be remanded for further adjudication of the agency's case in chief.

At the time the initial decision was issued, the Board's case law stated that, in a performance-based action under 5 U.S.C. chapter 43, an agency must show by substantial evidence that (1) the Office of Personnel Management (OPM) approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013). Further, even if the employee successfully completes the appraisal period, he may still be removed for unacceptable performance under chapter 43 if (1) the instances of

unacceptable performance are in the same critical elements involved in the appraisal period, and (2) the agency's reliance for its action is limited to those instances of performance that occur within 1 year of the advance notice of the appraisal period. *Muff v. Department of Commerce*, 117 M.S.P.R. 291, ¶ 5 (2012). In this case, the administrative judge found that the agency established by substantial evidence elements 1 through 4 of the *White* standard, and although the appellant successfully completed the appraisal period, the agency also showed by substantial evidence that his performance in the Quality element fell below the acceptable level shortly thereafter. ID at 10-20.

On petition for review, the appellant does not dispute that OPM approved the agency's performance appraisal system or that the agency communicated his standards to him. Nor does he appear to dispute that the agency gave him a reasonable opportunity to demonstrate acceptable performance, or that shortly after he successfully completed the written warning period, his performance in the Quality element once again fell below the Marginal level. For the reasons explained in the initial decision, we agree with the administrative judge that the agency proved these elements of its case by substantial evidence. ID at 10, 16-20.

The appellant disputes the administrative judge's finding that his performance standards were valid. PFR File, Tab 1 at 5-6. The Board has found that, in order to be valid, performance standards must be reasonable, realistic, and attainable, clearly stated in writing, and to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013). On petition for review, the appellant argues that he had no way of knowing how many errors per quarter he was allowed to make and still have acceptable performance. PFR File, Tab 1 at 6-7. He argues that the agency gave him conflicting information, and he questions why he was previously promoted with 6 errors over a 26-week period but was removed after making only 2 errors over a 12-week period. *Id.*

Performance standards should be specific enough to provide an employee with a firm benchmark towards which to aim his performance and must be sufficiently precise so as to invoke a general consensus as to their meaning and intent. *Towne*, 120 M.S.P.R. 239, ¶ 21.

We are not persuaded by the appellant's argument. Under the Quality standard, as written and as communicated to the appellant on multiple occasions, performance is expressed as a percentage of office actions that contain clear errors, not as a raw number of errors allowed during a given period of time. IAF, Tab 4 at 53-56, 75-78, 157-58, 293, 300. As we believe the appellant understands, it would not work to write the standard in terms of allowable errors per year or per quarter or per other period of time because the number of allowable errors would vary depending on the number of office actions the Patent Examiner submitted during that time period. As for the appellant receiving a promotion despite committing six errors during the preceding 6 months, we do not know what his Quality rating during that time period was or should have been; there is no evidence to show the number of office actions that the appellant submitted during that period, what category those six errors were under, or whether the agency chose to address any of those errors through training or mentoring rather than charge them against the appellant's performance, which it might well decide to do, especially for a Patent Examiner who has not yet achieved full career ladder promotion.[7] IAF, Tab 4 at 77.

For the reasons explained in the initial decision, we agree with the administrative judge that the appellant was clearly notified in writing of the Quality performance standard that he was required to meet. ID at 10-11. Not only did the appellant receive detailed notice of the standard, the method under which his performance would be assessed, and the maximum percentage of errors allowed, but the agency also notified him at the beginning of the oral warning

---

[7] GS-14 is the full-performance level for a nonsupervisory Patent Examiner. Tr., Vol. 2 at 165 (testimony of the appellant's union representative).

period, at the beginning of the written warning period, and immediately after the written warning period of the precise timeframes under which his performance in this element would be assessed. IAF, Tab 4 at 157, 300, 343-45. Therefore, we agree with the administrative judge that the agency proved by substantial evidence that it clearly communicated to the appellant this performance standard.

In her initial decision, the administrative judge also concluded that the appellant's performance standards under the Quality element were sufficiently objective. ID at 12-13. She found that, although the criteria of this element had elements of subjectivity, the agency reasonably addressed this matter through its "clear error" standard, and whatever subjectivity remained did not render the Quality standard invalid. ID at 13-14; *see Neal v. Defense Logistics Agency*, 72 M.S.P.R. 158, 162 (1996) ("[T]he fact that performance standards may call for a certain amount of subjective judgment on the part of the employee's supervisor does not automatically render them invalid, especially where, as here, the appellant's position involves the type of professional judgment which is not susceptible to a mechanical rating system."). The administrative judge also considered the appellant's argument that SPEs arbitrarily called errors on examiners without a consistent basis for doing so and that SPEs used secret standards and abused the vagueness of the clear error definition to target employees they did not like. However, she found that the record did not support the existence of any such abuses. ID at 14-16.

On petition for review, the appellant renews his allegation that the agency applied its Quality standard inconsistently, but he has not identified any evidence in the record to support this allegation. PFR File, Tab 1 at 5-7. He appears to concede this lack of evidence but attributes it to the administrative judge's denial of his motion to compel. *Id.* at 7. For the reasons explained below, we find no abuse of discretion in the administrative judge's ruling. In any event, even if the agency had applied its Quality standard inconsistently or unfairly, this would not support a finding that the performance standard is invalid. In a chapter 43 appeal,

evidence of disparate or unequal application of a performance standard in practice may be relevant to an appellant's affirmative defense of prohibited discrimination or another prohibited personnel practice, but it does not undermine the validity of the standard itself.[8] *Rutz v. Department of Labor*, 28 M.S.P.R. 677, 680 (1985).

The appellant does not directly dispute the administrative judge's finding that his performance in the Quality element fell to the Unacceptable level within 1 year of the beginning of the written warning period. ID at 17-20. Nevertheless, we observe that the appellant has taken issue with how the agency evaluates performance in the Quality element, and we find that this warrants some discussion. As explained above, SPEs do not evaluate the entire body of a Patent Examiner's work but instead review one or two random samples of that work every quarter to determine whether further scrutiny is warranted. The Board has held that, when an agency charges an employee with failing to meet a performance standard that sets a percentage requirement, it is not required to provide an accounting of every assignment. *Addison v. Department of Health and Human Services*, 46 M.S.P.R. 261, 269 (1990), *aff'd*, 945 F.2d 1184 (Fed. Cir. 1991). At a minimum, however, the agency must establish some methodology for selecting the examples of alleged unacceptable performance so that a reasonable

_____

[8] Evidence of disparate or uneven application of performance standards to the appellant as compared to non-whistleblowers may be relevant to his whistleblower reprisal affirmative defense, which is discussed further below. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (discussing the factors relevant to an agency's affirmative defense to a claim of whistleblower reprisal, which include any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated). Although the appellant originally raised a claim of sex discrimination, he withdrew that claim, and has not raised a claim of discrimination on review. IAF, Tab 14 at 6-7. In a chapter 75 appeal, inconsistent penalties are a factor for the agency and the administrative judge to consider in determining a reasonable penalty. *See McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 11 (2014) (observing, in an appeal of a removal under chapter 75, that among those factors the Board will review in determining the reasonableness of the penalty is its consistency with those imposed upon other employees for the same or similar offenses). However, because the agency took its action here under chapter 43, the Board may not review the penalty. *Stein-Verbit v. Department of Commerce*, 72 M.S.P.R. 332, 340 (1996).

person could conclude that the appellant's performance fell below the position's requirements. *Id.* For the following reasons, we find that the random sample methodology used to review the work quality of Patent Examiners satisfies those criteria.

In *Player v. Veterans Administration*, 32 M.S.P.R. 448, 450 (1987), an agency took a chapter 43 adverse action against the appellant based on her alleged unacceptable performance in the critical elements of "accuracy" and "productivity." Based on samples of the appellant's work, the agency found that more than 20% of the documents that she created needed to be returned for correction, and she failed to meet deadlines 85% of the time, both of which exceeded the maximum threshold for acceptable performance. *Id.* The Board reversed because the agency failed to show either that it evaluated the entirety of appellant's work product or that the samples it evaluated were selected in an objective, systematic fashion such that the errors in, and the untimeliness of, those samples could be extrapolated to the appellant's work product as a whole. *Id.* at 450-52. In *Bowling v. Department of the Army*, 47 M.S.P.R. 379, 382-84 (1991), the Board reached a similar conclusion in an appeal of a performance-based action under 5 U.S.C. chapter 75. Among other things, the Board found that the agency failed to show that its sampling of the appellant's work product was objective and systematic such that the errors it identified in the samples could fairly be generalized to the entire body of her work. *Id.*

The agency's methodology in the instant appeal does not suffer from the same defects, principally because it does not rely on extrapolation from the samples reviewed; nowhere does the agency assume, based on errors found in the office actions that it actually reviewed, that errors existed in any office actions that it did not review. In other words, the agency only charged the appellant with errors that it actually found. The agency's method of sampling could lead to errors being undercounted, but it could never lead to errors being overcounted. We acknowledge that the agency's method of random sampling could result in

Patent Examiners with similar error rates being treated differently; even if a Patent Examiner's office actions in a given quarter contain many errors, these would likely be overlooked if the first office action that the SPE selects for review that quarter happens to be error-free. Nevertheless, such, nondiscriminatory, non-retaliatory disparate treatment is immaterial to the issues in a chapter 43 appeal.

Although the appellant has not demonstrated any error in the administrative judge's analysis of the agency's case in chief, we find that this appeal must be remanded for further adjudication. Shortly after the initial decision was issued, the U.S. Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that in addition to the elements of the agency's case set forth above, the agency must also justify the institution of a performance improvement plan by proving by substantial evidence that the employee's performance was unacceptable prior to that time. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Although the record in this appeal already contains evidence suggesting that the appellant's performance over the 6 months leading up to the written warning period was indeed Unacceptable, IAF, Tab 4 at 88-301; Tr., Vol. 1 at 39-95 (testimony of SPE 1), 139-56 (testimony of SPE 2), we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the written warning was unacceptable in one or more critical elements, *see Lee*, 2022 MSPB 11, ¶¶ 15-17.

<u>The appeal must be remanded for further adjudication of the appellant's whistleblower defense.</u>

To prove an affirmative defense of retaliation for protected whistleblowing, an appellant must prove by preponderant evidence that he engaged in activity protected under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D), and that the activity was a contributing factor in the contested personnel action. 5 U.S.C.

§ 1221(e)(1); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015). If an appellant meets this burden, the burden of persuasion shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(2); *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 24 (2014).

In her initial decision, the administrative judge found that the appellant was claiming four written protected disclosures and an unspecified number of oral disclosures. ID at 22. The first written disclosure occurred in or around January 2016, when the appellant disputed errors charged him during the signatory review process, i.e., the review process by which the agency determines whether a Patent Examiner will be granted signatory authority. IAF, Tab 1 at 5. The administrative judge found that this disclosure was protected, but the appellant failed to show that it was a contributing factor in his removal. ID at 22-23, 25-28. The second written disclosure was a February 4, 2016 memorandum to the union in which the appellant requested that the union initiate negotiations about the agency's performance appraisal program. IAF, Tab 1 at 5, 12-16. The administrative judge found that this disclosure was not protected. ID at 23-24. The third written disclosure was an October 23, 2018 letter that the appellant wrote to the Department of Labor, objecting to the results of recent union elections and criticizing the agency's prohibition on discussing union matters over its telecommunication systems. IAF, Tab 1 at 5, 18-20. The administrative judge found that even if this letter were considered a protected disclosure, the appellant failed to show that it was a contributing factor in his removal. ID at 24. The fourth written disclosure was a January 19, 2019 email that the appellant sent to the Technology Center Director, protesting his assignment to patent applications left by a former Patent Examiner and complaining of error calls in his work on those applications. IAF, Tab 1 at 5-6. The administrative judge found that this disclosure was not protected. ID at 24-25.

The appellant characterized his oral disclosures more generally, stating that he had made "many verbal protected disclosures," "early and often in [his] career." IAF, Tab 1 at 6-7. The administrative judge found that the appellant failed to identify any of his alleged oral disclosures with reasonable specificity and therefore failed to show that any of his oral disclosures were protected. ID at 25. The administrative judge then conducted an alternative analysis, finding that even if the appellant had shown that one of his disclosures was protected and was a contributing factor in his removal, the agency proved by clear and convincing evidence that it would have taken the same action regardless. ID at 28-30.

On petition for review, the appellant disputes the administrative judge's finding that disclosure 1 was not a contributing factor in his removal. He appears to criticize the administrative judge's application of the knowledge/timing test of 5 U.S.C. § 1221(e)(1), under which contributing factor may be inferred if the relevant agency officials knew of the protected disclosure and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. PFR File, Tab 1 at 9. However, we agree with the administrative judge that contributing factor with respect to disclosure 1 cannot be established through the knowledge/timing test. ID at 25-26. A space of 2 years is generally considered the outer limit for establishing contributing factor under this method, and the time between the appellant's January 2016 disclosure and the October 10, 2018 oral warning was well in excess of that limit. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 21 (2013); *see Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that a lapse of more than 2 years was too great to satisfy the knowledge/timing test).

Even if the knowledge/timing test is not satisfied, an appellant can still prove contributing factor by alternative means. In that case, the Board will consider other evidence, such as that pertaining to the strength or weakness of the

agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). The administrative judge considered such evidence in this case and found that the appellant still failed to establish that disclosure 1 was a contributing factor in his removal. ID at 25-28. Specifically, she found that the agency presented strong evidence in support of its removal action, "well in excess of its substantial evidence burden," that there was no evidence that the appellant's work was scrutinized more closely than the work of other Patent Examiners, and that none of the relevant agency officials would have had a significant retaliatory motive because disclosure 1 was merely a generalized complaint about the signatory review process and the unidentified officials involved therein. ID at 26-28. The administrative judge further found that SPE 1 was the only official who had been shown to have actual knowledge of disclosure 1, and that her actions prior to leaving the appellant's chain of command during the oral warning period were inconsistent with retaliatory motive. ID at 27-28.

On petition for review, the appellant argues that the administrative judge improperly considered this disclosure in isolation of his many subsequent disclosures about the agency's quality management practices, and considering these disclosures in the aggregate would yield a finding that disclosure 1 was a contributing factor in his removal. PFR File, Tab 1 at 9-10. However, the appellant's suggested approach of conducting a single contributing factor analysis for multiple discreet disclosures, some of which are not protected under the Whistleblower Protection Enhancement Act, is not consistent with precedent. *See Shannon*, 121 M.S.P.R. 221, ¶ 32 ("For each disclosure that she finds protected, the administrative judge shall then determine whether the disclosure was a contributing factor to the appellant's removal."). Although the Board has found that a protected disclosure can be linked to a distant performance-based personnel

action through an intervening continuum of related performance-based actions, *Agoranos*, 119 M.S.P.R. 498, ¶ 23, it has never held that such a link can be established through an intervening continuum of related disclosures. We therefore decline to impute a finding of contributing factor to disclosure 1 based on the facts and circumstances surrounding the appellant's other disclosures.

The appellant also argues that his removal under the very quality management practices of which he was complaining offers circumstantial evidence of contributing factor. PFR File, Tab 1 at 10-11. We have considered the appellant's argument, but we are not persuaded that the relationship between the charge underlying his removal and his disclosure about the signatory review practice several years earlier constitutes evidence, circumstantial or otherwise, that his disclosure was a contributing factor in the action. For the reasons explained in the initial decision, we agree with the administrative judge that the appellant did not prove that disclosure 1 was a contributing factor in the removal. ID at 26-28.

Regarding disclosure 2, the appellant argues that the administrative judge should have found that it was protected because it pertained to the same subject matter as disclosure 1. PFR File, Tab 1 at 7. We disagree. In disclosure 1, the appellant accused agency officials of intentionally misapplying the clear error standard to increase the number of errors charged against Patent Examiners' work. IAF, Tab 1 at 5. As the administrative judge correctly found, this was an allegation of abuse of authority. ID at 22-23. The Board has historically defined an abuse of authority as an arbitrary and capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to herself or to other preferred persons. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 22 (2013). However, in *Smolinski v. Merit Systems Protection Board*, 23 F.4th 1345, 1351-52 (Fed. Cir. 2022), the Federal Circuit defined an abuse of authority more broadly as an arbitrary and capricious exercise of authority that is contrary to the

agency's mission. In any event, whichever standard is applied to this case, the result is the same. Disclosure 2 concerned roughly the same subject matter as disclosure 1 (quality management), but it did not contain any similar allegation of wrongdoing. IAF, Tab 1 at 12-16. Instead, it is a request for the appellant's union to get more involved in negotiating quality management. *Id.* While the appellant stated in general terms his opinion that the agency's quality management practices were outdated, frustrating, confusing, and discredited, IAF, Tab 5 at 12, we agree with the administrative judge that disclosure 2 amounted to a policy dispute not covered under the Whistleblower Protection Enhancement Act, ID at 23; *see Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶¶ 9-10 & n.3 (2015). Even if the appellant's allegations were true, they would not represent the kind of danger or wrongdoing described in 5 U.S.C. § 2302(b)(8).

Regarding disclosure 3, the administrative judge found that the appellant failed to allege that any responsible management official was aware of this disclosure. ID at 24. Therefore, the administrative judge determined that the appellant did not prove the knowledge element of the knowledge/timing test. *Id.* On petition for review, the appellant disputes the administrative judge's analysis, arguing that the knowledge/timing test is not the only way to prove contributing factor and that he established this element of his case by other means. PFR File, Tab 1 at 8. We agree with the appellant that the administrative judge's contributing factor analysis should not have stopped with the appellant's failure to satisfy the knowledge/timing test. *See Dorney*, 117 M.S.P.R. 480, ¶¶ 14-15. However, we find that this error did not prejudice the appellant's substantive rights because disclosure 3 was not protected. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis to reverse an initial decision).

As stated above, disclosure 3 was a letter that the appellant sent to the Department of Labor shortly after a union election. IAF, Tab 1 at 18-20. In this

letter, the appellant explained that the agency generally prohibited employees from using the agency email and telephone systems to conduct union business. This prohibition, he argued, made it difficult for full-time telework Patent Examiners to participate in union governance, and during union elections, this policy also had the effect of favoring incumbent candidates and those who worked in the office. *Id.* However, even if all this is true, we do not find that the appellant had a reasonable belief that his letter evinced any category of danger or wrongdoing listed in 5 U.S.C. § 2302(b)(8).

The appellant testified that he believed that the agency's restrictions on the use of its telecommunication systems violated his or the union's First Amendment rights. Tr., Vol. 2 at 25-26 (testimony of the appellant). Although the First Amendment generally prohibits the Government from regulating speech based on content, it does not prohibit the Government from "mak[ing] content-based distinctions when it subsidizes speech." *Davenport v. Washington Education Association*, 551 U.S. 177, 188-89 (2007); *see also Ysursa v. Pocatello Education Association*, 555 U.S. 353, 355, 358 (2009) (determining that a state did not violate the First Amendment by prohibiting public employees from making payroll deductions to fund a union's political action committee, reasoning that "the government . . . is not required to assist others in funding the expression of particular ideas, including political ones"). We find that the appellant in this case was essentially seeking Government subsidization of union elections through the use of agency telecommunications equipment. It is well settled that a union does not have a right to use agency equipment and resources for internal business such as elections, and to the extent that a union's use of agency resources is not prohibited by law, it is subject to bargaining. *See National Oceanic and Atmospheric Administration and National Weather Service Employees Organization*, 20 F.S.I.P. 021, 2020 WL 3960982, *27-28 (2020); *National Treasury Employees Union and Internal Revenue Service*, 38 F.L.R.A. 615, 618-20 (1990). We believe that the appellant understood this at the time he made

disclosure 3 because his proposed solution was for the agency and the union to come to an agreement on the matter. IAF, Tab 1 at 20. We find that the appellant lacked a reasonable belief that the agency's policy on using its telework equipment for internal union business implicated any category of wrongdoing under 5 U.S.C. § 2302(b)(8).

Regarding disclosure 4, the administrative judge found that the appellant's email to the Technology Center Director was not protected because it addressed the appellant's individual grievance regarding his work assignments and what he regarded as unfair treatment between him and another examiner. ID at 24-25. She further found that the disclosure was conclusory and lacking in specifics about the alleged unequal treatment. *Id.* The appellant disputes this finding on review, arguing that this disclosure was protected because it included allegations that his supervisor was not doing her job. PFR File, Tab 1 at 8-9. He also argues that the disclosure was sufficiently specific because, in context, the Technology Center Director knew who the appellant was talking about and what his complaints were. *Id.* at 8.

We agree with the appellant. Unfair and inequitable treatment was certainly the gravamen of the appellant's complaint, but he specifically stated that he was being required to reopen another Patent Examiner's cases because this individual had "evidently [been] working for years without even cursory oversight." IAF, Tab 1 at 5-6. Given that one of an SPE's major duties is to review her subordinate Patent Examiners' work for quality, and given that the appellant was reworking multiple office actions by a former Patent Examiner whose repeated failure to meet those quality standards had long escaped the SPEs' attention, we find that the appellant had a reasonable belief that one or more SPEs had not been doing their job. IAF, Tab 1 at 5-6; Tr., Vol. 1 at 26-27 (testimony of SPE 1). We therefore find that the appellant has shown that he reasonably believed that disclosure 4 evidenced gross mismanagement, and thus was protected under 5 U.S.C. § 2302(b)(8). *See White v. Department of the Air*

*Force*, 63 M.S.P.R. 90, 95 (1994) (defining gross mismanagement as a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission). In so finding, we observe that, to the extent that the appellant was motivated to make this disclosure by his own dissatisfaction with his work assignments, this is not relevant to whether his disclosure was protected. The fact that an appellant's motivation in making his disclosure may have been personal does not prevent the disclosure from being protected whistleblowing. 5 U.S.C. § 2302(f)(1)(C); *Wojcicki v. Department of the Air Force*, 72 M.S.P.R. 628, 634-35 (1996).

We also find that the appellant has proven, under the knowledge/timing test, that disclosure 4 was a contributing factor in his removal. It is undisputed that the Technology Center Director was aware of this disclosure and that he proposed the appellant's removal less than a year later. IAF, Tab 1 at 6-7, Tab 4 at 34-42.

As noted above, the administrative judge conducted an alternative analysis, finding that if the appellant had made a protected disclosure that was a contributing factor in his removal, the agency proved by clear and convincing evidence that it would have removed him anyway. ID at 28-30. However, such an alternative analysis is not permitted under the law. Under 5 U.S.C. § 1221(e)(2), the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established his prima facie case. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).[9] On remand, the administrative judge should conduct a new clear and convincing evidence analysis with respect to disclosure 4. In conducting this analysis, the

---

[9] Although the U.S. Court of Appeals for the Seventh Circuit has disagreed with the Board's decision in *Clarke*, it has done so on different grounds. *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 923-25 (7th Cir.), *as amended on denial of reh'g and reh'g en banc* (7th Cir. 2018). Thus, its disagreement does not implicate the basis for which we cite *Clarke* here.

administrative judge should bear in mind the heightened clear and convincing burden of persuasion for the agency's rebuttal case.[10]  *See generally Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-68 (Fed. Cir. 2012); *see Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 28 (2011) (finding that "clear and convincing" is an intentionally high standard of proof).

<u>The appellant has not demonstrated error in the administrative judge's analysis of his claim of retaliation for protected union activity.</u>

To establish an affirmative defense of reprisal for union activity that could be the subject of neither an equal employment opportunity complaint nor an individual right of action appeal, the appellant must prove by a preponderance of the evidence that he engaged in protected activity, the accused official knew of the protected activity, the adverse employment action under review could, under the circumstances, have been retaliation, and there was a genuine nexus between the retaliation and the adverse action.  *Warren v. Department of the Army*, 804 F.2d 654 (Fed. Cir. 1986); *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016).  In her initial decision, the administrative judge found that the specific union activity for which the appellant was claiming reprisal was his February 4, 2016 memorandum requesting that the union initiate negotiations about the agency's performance appraisal program (the same memorandum at issue in the appellant's second claimed whistleblower disclosure, discussed above).  ID at 30-31.  She found that, even assuming that this constituted protected union activity, the appellant failed to establish a genuine nexus between this activity and his removal.  ID at 31-32.

On petition for review, the appellant argues that the administrative judge used the wrong standard.  He states that the administrative judge simply dismissed his claim on the basis that SPE 1 was the only individual with demonstrable knowledge of his February 4, 2016 memorandum, "but it is not

---

[10] Because we are remanding this appeal for the administrative judge to conduct a new analysis of the agency's affirmative defense, we do not reach the appellant's argument on review that the initial analysis of the issue was incorrect.  PFR File, Tab 1 at 9-12.

necessary for each and every individual to know about a given disclosure or activity in order for that activity to make a contribution to an adverse personnel action." PFR File, Tab 1 at 13. We agree with the appellant in principle that a genuine nexus could be established between protected activity and an adverse action even if not every official involved in the action knew about the activity. However, we disagree with his characterization of the administrative judge's analysis. The administrative judge did not simply dismiss his claim; she carefully analyzed it, considering the passage of time between this activity and the appellant's removal, who had knowledge of the activity, the roles that various officials played in the removal action, and any possible anti-union or retaliatory animus that these individuals might have. ID at 31-32. These were all appropriate considerations, and for the reasons explained in the initial decision, we agree with the administrative judge that the appellant did not establish a genuine nexus between the February 4, 2016 memorandum and his removal. *Id*.; *see Warren*, 804 F.2d at 658.

The appellant has not demonstrated error in the administrative judge's analysis of his First Amendment claim.

The appellant argued that the agency violated his and his union's First Amendment right to free speech by restricting their ability to discuss the Patent Examiner performance standards within the office. IAF, Tab 17 at 5-7. The administrative judge found that the appellant failed to show that the agency violated his First Amendment right to free speech, and in any event, the appellant did not establish a causal connection between this matter and his removal. ID at 34-35. On petition for review, the appellant appears to argue that the administrative judge misconstrued his claim. According to the appellant, the agency has deprived the union of a forum for debate about the Patent Examiner performance standards, which he states are not valid because the union cannot legitimately bargain about them. PFR File, Tab 1 at 13. However, even considering the appellant's argument in this light, he has not shown that his

removal resulted from a violation of his First Amendment rights. There is insufficient evidence in the record to show that the agency did not discuss the standards with its employees or the union. To the extent that the appellant is alleging that the agency violated the requirements of chapter 43, we disagree. "Agencies are encouraged to involve employees in developing and implementing" their performance appraisal systems and programs, but the law does not require that they do so.[11] 5 C.F.R. §§ 430.204(c), .205(d).

<u>The appellant has not demonstrated error in the administrative judge's analysis of his claim that the agency violated the FLSA.</u>

The appellant argued below that the agency violated the FLSA by requiring Patent Examiners to work in excess of 40 hours per week without additional compensation, which is prohibited by 29 U.S.C. § 207(a)(1). IAF, Tab 17 at 8. Specifically, he argued that the time involved in rebutting error charges and revising completed work often requires that Patent Examiners exceed that work-hour threshold. *Id.* In her initial decision, the administrative judge found that the agency did not violate the FLSA in this regard because overtime or other time was available for this purpose. ID at 35-36. She further found that the appellant failed to show that the agency's actions prevented him from rebutting charged errors, or that the time he spent rebutting error calls negatively affected his performance in the Quality element. ID at 36-37.

On petition for review, the appellant disputes the administrative judge's findings. He argues that, although overtime or other time might technically have been available, the agency discouraged and denied his requests for it. PFR File, Tab 1 at 14. However, for the reasons explained in the initial decision, we agree with the administrative judge that the appellant has not shown a causal connection between his removal and the denial or discouragement of his requests for time. ID at 36-37. Furthermore, the record shows that, as a salaried professional, the

---

[11] We are not suggesting that the current performance appraisal system and program were developed without employee or union input. The record does not seem to contain any evidence on this one way or the other.

appellant was an FLSA-exempt employee.  IAF, Tab 4 at 22; *see* 29 C.F.R. §§ 541.300-.301 (defining the exemption for learned professionals).  Therefore, it would appear that the overtime provisions of 29 U.S.C. § 207 do not apply to him.  *See* 29 U.S.C. § 213(a)(1) (exempting professional employees from coverage under 29 U.S.C. § 207).  Any entitlement that the appellant had to overtime appears to have arisen under the collective bargaining agreement or agency policy rather than the FLSA.

The appellant also states that "it is not out of the question" that the agency would have removed him in retaliation for requesting such time.  PFR File, Tab 1 at 14.  However, this is a claim of retaliation that is not properly before the Board because the appellant did not raise it below.  *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (explaining that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  Furthermore, the appellant's speculation that his removal could have been in retaliation for these requests does not meet the preponderant evidence standard.  *See Fisher v. Environmental Protection Agency*, 108 M.S.P.R. 296, ¶ 18 (2008).

<u>The appellant has not demonstrated error in the administrative judge's analysis of his claim that the agency violated the APA.</u>

The appellant argued below that the agency's "clear error" standard was nebulous and inconsistently applied, and therefore was in violation of 5 U.S.C. § 706(2)(A) as being "arbitrary and capricious."  IAF, Tab 17 at 8-11.  In her initial decision, the administrative judge found that, even if the appellant's performance standards and procedures were subject to the APA, the appellant failed to show that they were arbitrary and capricious.  ID at 37.  Specifically, she found that the standards were clearly stated and tied to the appellant's work product, that error charges were subject to multiple layers of review, and that the errors charged against the appellant were appropriate.  ID at 37-38.

On petition for review, the appellant argues that, "[j]ust because multiple layers of management go along with targeting an individual does not mean that the individual was not targeted." PFR File, Tab 1 at 14. He asserts that agency management had reason to target him because of his protected disclosures. *Id.* at 14-15. This appears to us less an argument about the APA and more an argument about the appellant's whistleblower reprisal claims, which we have already addressed above. We find that the appellant has not identified any error in the administrative judge's analysis of this issue. Furthermore, the appellant's challenges to his performance standards are excluded from review under the APA. The APA proscribes arbitrary and capricious "agency action." 5 U.S.C. § 706(2). Agency actions covered include rulemaking. 5 U.S.C. § 551(4). However, the agency's adoption of its internal performance metrics is excepted from the rulemaking procedures covered by the APA. *See* 5 U.S.C. § 553(a)(2) (exempting from APA rulemaking procedures "matter[s] relating to agency management or personnel").

## The administrative judge did not abuse her discretion in denying the appellant's motion to compel.

Discovery is the process by which a party may obtain relevant information from another party to an appeal. 5 C.F.R. § 1201.72(a). "Relevant information includes information that appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* An administrative judge has wide discretion over matters pertaining to discovery, and the Board will not reverse her rulings on discovery matters absent an abuse of discretion. *Parker v. Department of Housing and Urban Development*, 106 M.S.P.R. 329, ¶ 9 (2007); *see* 5 C.F.R. § 1201.41(b)(4).

The appellant's theory of the case revolves largely around the agency's alleged abuse and uneven application of the Quality standard, which he argues manifested in error calls that were either arbitrary or engineered to target specific employees. He contends that he was unable to develop the record on this issue

because the administrative judge improperly denied his motion to compel discovery. PFR File, Tab 1 at 4, 7, 11-13, 15. For the following reasons, we find no abuse of discretion in the administrative judge's ruling.

The appellant timely served his initial discovery requests on June 25, 2020, which was 30 days from the date of the acknowledgment order. IAF, Tab 2, Tab 6; *see* 5 C.F.R. § 1201.73(d)(1). In addition to several interrogatories, the appellant propounded 10 requests for production of documents. IAF, Tab 6. The agency's responses were due 20 days later, on July 14, 2020, and it appears that the agency met that deadline, although its responses were not entirely to the appellant's satisfaction.[12] IAF, Tab 10. Under the Board's regulations, the appellant had 10 days to serve follow-up discovery on the agency, which would have been July 24, 2020. 5 C.F.R. § 1201.73(d)(2). Further, any motion to compel would have been due by the same date. 5 C.F.R. § 1201.73(d)(3). However, the appellant did not serve follow-up discovery or file a motion to compel within that time limit. Instead, at the July 30, 2020 prehearing conference, he informed the administrative judge that he was in the process of drafting a motion to compel. IAF, Tab 14 at 2. The administrative judge notified this pro se appellant that the time for filing a motion to compel had already passed, but in the interest of justice, she extended the time limit to August 3, 2020. *Id.*

On that date, the appellant filed a motion to compel discovery. IAF, Tab 15 at 4-8. He revised 5 of his 10 original requests for production (items 3, 4, 6, 9, and 10), propounded 3 new requests for production (items 11 through 13), and sought an order compelling discovery on all 8 of them. *Id.* The agency opposed the appellant's motion on both timeliness and relevance grounds. IAF,

---

[12] On July 15, 2020, the appellant filed a document captioned "Response to Agency Opposition," in which he took issue with some of the agency's discovery responses and objections. IAF, Tab 10. The appellant subsequently clarified that this was not intended as a motion to compel but was instead an attempt to resolve the discovery dispute directly with agency counsel. IAF, Tab 14 at 1-2.

Tab 19. The administrative judge then issued an order denying the motion to compel in its entirety, finding that the discovery requests at issue were either irrelevant, untimely, or both. IAF, Tab 20.

For example, in item 3, the appellant requested the number of examiners whom the agency had removed under chapter 43 over the past 20 years, and which critical element those examiners failed to meet. IAF, Tab 15 at 5. He stated that this information would show broad patterns in the agency's use of chapter 43. *Id.* The administrative judge found that this request exceeded the scope of the appeal, both in time and in subject, and that his argument that the information would establish "broad patterns" was speculative and did not identify the relevancy of this information to the issues in the appeal. IAF, Tab 20 at 2. She found that the agency responded appropriately to this request by providing the appellant information about cases similar to his. *Id.*

We agree with this ruling because the agency's general historic use of chapter 43 adverse action procedures is not tied to the agency's burden of proof in this particular case or any of the appellant's affirmative defenses. Under item 4, the appellant had originally requested information about all of the errors charged by SPEs 1 and 2 during the course of their careers. IAF, Tab 15 at 5. When the agency responded that it did not have the requested information, the appellant amended his request and sought a comparative analysis of the errors charged in several specific office actions. *Id.* at 5-6. The administrative judge found that this was a new request for narrative information unlike the original document request, and she denied it as untimely. IAF, Tab 20 at 2. We agree with this ruling because the appellant's motion to compel was seeking information outside the scope of the initial discovery request and was served on the agency outside the regulatory time limit for making follow-up requests. *See* 5 C.F.R. § 1201.73(d)(2).

Under item 6, the appellant requested that the agency provide a list of office cases in the Art Units to which SPEs 1 and 2 were assigned, and which

were either reopened for prosecution or had a second non-final office action issued, indicating whether errors were charged in those cases. IAF, Tab 15 at 6. In his motion to compel, the appellant revised his request and sought information regarding the raw number of errors charged to each Patent Examiner in the Art Units during the past 5 years, as well as the raw numbers of reopened cases or second non-final office actions for each Patent Examiner. *Id.* at 6-7. The administrative judge denied this request as not reasonably calculated to lead to the discovery of admissible evidence and as untimely because it sought different information than the initial request. IAF, Tab 20 at 3.

We agree with the administrative judge's ruling, for the reasons stated in her order. *Id.* Not only did the appellant's motion to compel seek information outside the scope of the initial discovery request, but also it does not appear that the information sought could be used to show that the agency improperly identified any of the errors at issue in the instant appeal or that there existed errors in the other cases that were improperly excused.

The Board remands this appeal for further proceedings consistent with this Nonprecedential Order.

For the reasons set forth above, we remand this appeal for further adjudication regarding the appellant's whistleblower defense and his performance prior to the written warning period. Regarding the appellant's whistleblower defense, both parties were fully apprised of their respective burdens below and had a full and fair opportunity to present evidence and argument on the issue. IAF, Tab 31. Therefore, on remand, the administrative judge need not accept any further evidence or argument on the appellant's whistleblower claim except to the extent it concerns the agency's determination that the appellant's performance warranted issuing the written warning. *See Santos*, 990 F.3d at 1364. Regarding the appellant's performance leading up to the written warning period, because the parties were not notified below that this would be an issue before the Board, the

administrative judge shall accept relevant argument and evidence on remand and shall hold a supplemental hearing if appropriate. *See Lee*, 2022 MSPB 11, ¶ 17.

The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If on remand the agency makes the additional showing required under *Santos* and proves by clear and convincing evidence that it would have removed the appellant notwithstanding disclosure 4, the administrative judge may incorporate her prior findings on the other elements of the agency's case and the appellant's affirmative defenses in the remand initial decision. *See id.* However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's prewritten warning performance affects the administrative judge's analysis of the appellant's affirmative defenses, she should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:           _____
                         Gina K. Grippando
                         Clerk of the Board

Washington, D.C.