# United States Court of Appeals for the Federal Circuit

---

**GEORGE SMOLINSKI,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2021-1751

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-20-0814-W-1.

---

Decided: January 19, 2022

---

STEPHANIE RAPP-TULLY, Tully Rinckey PLLC, Washington, DC, argued for petitioner. Also represented by MICHAEL WILSON MACOMBER, Albany, NY.

JEFFREY GAUGER, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by TRISTAN L. LEAVITT, KATHERINE MICHELLE SMITH.

---

Before MOORE, *Chief Judge*, DYK and REYNA, *Circuit Judges*.

MOORE, *Chief Judge*.

Dr. George Smolinski petitions for review of a Merit Systems Protection Board decision dismissing his whistleblower retaliation claims against the United States Army for lack of jurisdiction. *Smolinski v. Dep't of Army*, No. DC-1221-20-0814-W-1, 2020 WL 7496634 (Dec. 14, 2020) (*Board Decision*). Because the Board correctly dismissed some of Dr. Smolinski's claims but erred in dismissing others, we affirm-in-part, reverse-in-part, and remand.

BACKGROUND

Dr. Smolinski is a Supervisory Physician in the Traumatic Brain Injury Clinic of the Landstuhl Regional Medical Center (LRMC), an Army hospital in Germany. At the time of the events in question, he served as a Lieutenant Colonel in the Army and occasionally saw patients at LRMC as a visiting provider. J.A. 210. Allegedly, the Army first offered Dr. Smolinski the Supervisory Physician role in July 2018, put a hold on hiring him in August 2018, withdrew its offer in November 2018, reposted the job opening later that month, rejected Dr. Smolinski's recycled application shortly thereafter, reposted the opening again in August 2019, offered him the job again in November 2019, went silent for three months while it considered his request for a higher salary, and then reduced its offer by $44,349. Around the time of these alleged events, Dr. Smolinski purportedly made protected disclosures.

In December 2017, Dr. Smolinski's wife received treatment in the LRMC emergency room that was allegedly "substandard." J.A. 58. She submitted a patient complaint, which made its way up the chain of command to Colonel Timothy Hudson, the hospital's commander. *Id.*; *see also* J.A. 122.

Three days later, the Smolinskis attended the Wiesbaden Health Clinic Holiday Ball and encountered Col. Hudson. J.A. 58. According to Dr. Smolinski, Col. Hudson was

"visibly intoxicated, attempted to intimidate Dr. Smolinski as a lower-ranking officer, and . . . made Mrs. Smolinski extremely uncomfortable by whispering in her ear and touching her to the point where she remarked that if she had been alone . . . she thought he would have assaulted her." *Id.* Dr. Smolinski filed a complaint regarding this behavior, and the Army launched an internal investigation under Army Regulation (AR) 15-6. J.A. 67. During the investigation, Col. Hudson was temporarily relieved of his duties. *See id.*

In April 2018, as part of the AR 15-6 investigation, Mrs. and Dr. Smolinski testified against Col. Hudson. *Id.* Dr. Smolinski testified that Col. Hudson "walked up behind my wife and whispered some things to her," then looked at Dr. Smolinski, pointed, and said, "I hate that guy. . . . I hate him." J.A. 211. He also testified that his wife "seemed uncomfortable" and "related to [him] later that she felt very uncomfortable and believed that if she and COL Hudson had been alone[,] he would have crossed a line." *Id.* For her part, Mrs. Smolinski testified:

> I felt a hand on the small of my back, and heard a voice in my ear. It was COL Hudson. He was drunk. He was very close, whispered to me, pointed to my husband, and said: "Did he tie his own bowtie?" I said yes, he dresses himself. Then COL Hudson went on a tirade . . . that my husband was making him look bad – he has a beautiful wife, he can tie his own tie. I kept moving away, and he kept getting closer. It ended with him pointing across the group, at my husband, . . . and shouting "I hate this guy."

J.A. 217. She further testified that "[h]is actions toward me felt predatory, and I felt like if he had been given the opportunity, it could have gone that way." J.A. 216.

In June 2018, the Army concluded its investigation and reinstated Col. Hudson as hospital commander. J.A. 67.

Allegedly, Mrs. Smolinski was then barred from several volunteering activities, including her work as a community liaison with a patient feedback committee. J.A. 58, 218. She complained about this to Colonel Claude Burnett, Deputy Commanding Officer, alleging that "she had been subjected to retaliation for giving a sworn statement in the [AR] 15-6 investigation, and that she was fearful that Dr. Smolinski would experience similar retaliation." J.A. 58–59. Col. Burnett assured Mrs. Smolinski that no one knew who had testified. *Id.* But now Col. Burnett knew.

In July 2018, Dr. Smolinski applied for his current position as a Supervisory Physician in LRMC's Traumatic Brain Injury (TBI) Clinic. J.A. 59, 194. The Army deemed Dr. Smolinski qualified for the position and extended him a tentative job offer. J.A. 59, 67.

In August 2018, Col. Burnett sent a memorandum launching an investigation into undisclosed "ethical concerns regarding the LRMC TBI Clinic Hiring Action for a Supervisory Physician." J.A. 191. While the investigation was pending, the Army placed a hold on hiring Dr. Smolinski. J.A. 59.

On November 1, 2018, Col. Burnett notified Dr. Smolinski that the Army was withdrawing its tentative job offer. J.A. 194. He cryptically reasoned that "the subject hiring action was re-evaluated by the Command and subsequently cancelled." *Id.*

Later that month, the Army allegedly reposted the same position on its website, and Dr. Smolinski applied using the same resume and credentials. J.A. 59. On November 26, however, the Army rejected Dr. Smolinski's application, claiming that he was not qualified for the position. *Id.*

In May 2019, Dr. Smolinski filed a complaint with the Office of Special Counsel (OSC). He alleged that the Army's August 2018 investigation, its withdrawal of the

tentative job offer, and its non-selection of Dr. Smolinski after reposting the job opening were reprisals for his wife's December 2017 patient complaint and for the Smolinskis' April 2018 testimony against Col. Hudson in the AR 15-6 investigation. J.A. 58–60.

In August 2019, Dr. Smolinski again applied for the same Supervisory Physician position in LRMC's TBI Clinic. J.A. 64. By that time, Col. Hudson had left his position as hospital commander. J.A. 67. The Army then extended Dr. Smolinski a "final job offer." J.A. 173. The offer letter stated, "You will receive a total annual salary of $265,953." *Id.* Dr. Smolinski counteroffered, asking for a salary of $275,000 and a 15% signing bonus. J.A. 150–52.

Then there was silence. Dr. Smolinski's intended start date of December 9, 2019, came and went without a decision regarding his counteroffer. *See* J.A. 173. A month later, Michael Kocal from Human Resources explained he was "still waiting to get word from LRMC management on their decision." J.A. 154–55. On January 20, Dr. Smolinski accepted the Army's original offer via email to Mr. Pfiffner and Mr. Kocal. J.A. 172. Mr. Pfiffner responded that he was still "waiting on further instructions from LRMC before [he could] proceed any further." J.A. 169.

Then, in February 2020, the Army extended Dr. Smolinski a new job offer at a lower salary: $221,604. J.A. 188. Mr. Pfiffner explained that the original offer was "an administrative error." *Id.* On February 23, 2020, Dr. Smolinski accepted the lower offer. J.A. 185–86.

In March 2020, Dr. Smolinski amended his complaint with OSC. The amended complaint recounted the developments since his original complaint. J.A. 63–66. It did not, however, allege that the Army had retaliated against him for filing his original or amended complaint.

On June 5, 2020, OSC informed Dr. Smolinski that it had reviewed his complaints, conducted an investigation,

and determined not to take any further action. J.A. 67–68. It reasoned that the investigation did not uncover evidence of retaliatory motive and that "[t]he Army provided clear and convincing evidence that it would have made the same decision[s], regardless of any protected disclosures or activity." J.A. 68. OSC did not explain what that evidence was or how it justified the Army's decisions.

Dr. Smolinski appealed to the Board under the Whistleblower Protection Act, 5 U.S.C. § 1221. Questioning the Board's jurisdiction, an administrative judge, *sua sponte*, ordered Dr. Smolinski to file a statement listing his alleged protected disclosures. J.A. 90, 96. Dr. Smolinski responded by identifying four activities: (1) his wife's December 2017 patient complaint, (2) his April 2018 testimony in the AR 15-6 investigation into Col. Hudson, (3) his original OSC complaint, and (4) his amended OSC complaint. J.A. 111–14. The Army then moved to dismiss, arguing the Board lacked jurisdiction because Dr. Smolinski failed to establish that those activities were protected disclosures. J.A. 199–206. The administrative judge dismissed the appeal for lack of jurisdiction. *Board Decision*, 2020 WL 7496634. Dr. Smolinski appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review de novo whether the Board has jurisdiction over an appeal. *Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1367 (Fed. Cir. 2020) (citing *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995)). The Board has jurisdiction if an appellant has exhausted his remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), or (b)(9)(B)–(D), and (2) such disclosure was a contributing factor in an agency's decision to take or abstain from a personnel action. *Id.* (first citing 5 U.S.C. § 1221; then citing *Yunus v. Dep't of Veterans Affs.*, 242 F.3d 1367, 1371–72 (Fed. Cir. 2001)). An allegation is

nonfrivolous if the appellant "alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* at 1369.

## I

Dr. Smolinski first argues the Board erred in dismissing his claim that the Army retaliated against him because of his wife's December 2017 patient complaint. Specifically, he argues her complaint was a protected disclosure because it showed "a specific threat to public health and safety" and "gross mismanagement." Appellant's Br. 5, 18. We do not agree.

Relevant to this claim, an agency may not retaliate against an employee for disclosing information that he "reasonably believes evidences . . . gross mismanagement . . . or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(ii). A belief is reasonable if a disinterested observer with knowledge of the essential facts could reach the same conclusion. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

At no point in this case has Dr. Smolinski alleged sufficient factual matter to state a plausible claim that his wife's December 2017 complaint was a protected disclosure.[1] Before OSC, he made only vague and conclusory allegations regarding that complaint:

In December 2017, Dr. Smolinski's wife received treatment at the LRMC Emergency Room which was substandard. She submitted a patient

---

[1]    We do not reach the government's argument that Dr. Smolinski lacks standing to assert a claim based on his wife's alleged disclosure. Similarly, we need not determine whether the complaint was made jointly by Dr. Smolinski and his wife, as Dr. Smolinski argues on appeal, or by his wife alone.

> complaint for which the hospital admitted its staff
> was in error; this complaint was then elevated to
> the hospital commander, COL Timothy Hudson.

J.A. 58 (original complaint); J.A. 63 (amended complaint).
He did not provide OSC the underlying complaint or any
further details. This barebones allegation does not plausi-
bly show that Mrs. Smolinski's complaint evidenced "gross
mismanagement" or a "substantial and specific danger to
public health or safety." *See* 5 U.S.C. § 2302(b)(8)(ii).

Before the Board, Dr. Smolinski did not buttress his al-
legations in any meaningful way. He merely clarified to
whom his wife complained and added that the hospital's
Chief Medical Officer, Colonel Richard Kynion, "admitted
the staff was in error." J.A. 111; *see also* J.A. 122. None of
that plausibly shows gross mismanagement or a danger to
public safety. Dr. Smolinski further averred that he and
his wife "reasonably believed" the hospital was "endan-
ger[ing] public health and safety," J.A. 111, but again with
no factual allegations detailing the nature of the danger.
Dr. Smolinski does not explain how Mrs. Smolinski's treat-
ment was allegedly substandard or risked public health.
All told, Dr. Smolinski did not state a plausible claim that
his wife's complaint was a protected disclosure.

Because Dr. Smolinski failed to state a plausible claim
based on his wife's December 2017 complaint, the Board
correctly held it lacked jurisdiction over that claim.

## II

Dr. Smolinski next argues that the Board erred in dis-
missing his claims that the Army retaliated against him
based on his April 2018 testimony against Col. Hudson. He
contends his testimony was a protected disclosure under
both 5 U.S.C. § 2302(b)(8) and § 2302(b)(9)(C). The govern-
ment defends the Board's dismissal of the § 2302(b)(8)
claim, but it agrees the Board erred in dismissing Dr.

Smolinski's claim under § 2302(b)(9)(C).  We conclude that the Board erred on both accounts.

## A

In pertinent part, § 2302(b)(8) protects an employee for "any disclosure of information [he] reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) . . . an abuse of authority."  *Id.* § 2302(b)(8)(A).  As mentioned, a belief is reasonable if a disinterested observer with knowledge of the essential facts could reach the same conclusion.  *Lachance*, 174 F.3d at 1381.  The Board defines abuse of authority as, for example, "an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons."  *Wheeler v. Dep't of Veterans Affs.*, 88 M.S.P.R. 236, 241 (2001) (internal quotation marks omitted) (citing *Ramos v. Dep't of Treasury*, 72 M.S.P.R. 235, 241 (1996)).

Dr. Smolinski alleged sufficient factual matter to state a plausible claim under § 2302(b)(8).  He averred that his April 2018 testimony disclosed how Col. Hudson's alleged conduct at the Military Ball was an abuse of authority and violated laws, rules, or regulations.  J.A. 41; J.A. 59–60.  Indeed, Dr. Smolinski testified that Col. Hudson was visibly intoxicated and repeatedly declared his hatred for Dr. Smolinski.  J.A. 211.  He also testified that Col. Hudson walked up behind Mrs. Smolinski, whispered in her ear, made her feel "very uncomfortable," and led her to "believe[] that if she and COL Hudson had been alone he would have crossed a line."  *Id.*  Dr. Smolinski further testified that Col. Hudson's position as commander of the hospital put him "in a difficult situation" because he was "uncertain what to do given the power dynamics."  *Id.*  Accepting those allegations as true, a disinterested observer could believe that Col. Hudson bullied Dr. Smolinski and sexually harassed Mrs. Smolinski.  This amounts to a non-frivolous allegation that Dr. Smolinski made a protected

disclosure. Both sexual harassment and bullying by a superior officer under the circumstances alleged would be abuses of authority. It was therefore error for the Board to dismiss this claim.

It is unclear whether the government agrees conduct such as that alleged here would be an abuse of authority under the Board's exemplary definition in *Wheeler*. *Compare* Appellee's Br. 19 (disputing that Col. Hudson's alleged conduct "adversely affected the rights of any person") *with* Oral Arg. at 24:25–29 (admitting sexual harassment "affect[s] the rights of others"), 25:59–26:56 (not answering question whether Col. Hudson's alleged bullying at a work function affected Dr. Smolinski's rights), *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21 -1751_12092021.mp3. Regardless, we conclude that the conduct alleged would constitute an abuse of authority.

Although § 2302 does not define abuse of authority, related whistleblower-protection statutes do. The statute that extends whistleblower protections to employees of defense contractors defines it, in pertinent part, as "[a]n arbitrary and capricious exercise of authority that is inconsistent with the mission of the Department of Defense." 10 U.S.C. § 2409(g)(6)(1). Likewise, the statute that extends whistleblower protections to employees of other federal contractors defines it as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned." 41 U.S.C. § 4712(g)(1). Applying those broader definitions to 5 U.S.C. § 2302, Dr. Smolinski's allegations evidence an abuse of authority. For whatever the Army's mission is, Col. Hudson's alleged bullying and sexual harassment were inconsistent with it.

That alleged conduct was, moreover, a violation of laws, rules, or regulations. Army regulations prohibit "[i]ntimidating, teasing, name calling, mockery, threats of violence, harassment, [or] taunting." Army Reg. 600–20,

Personnel-General: Army Command Policy, para. 4–19$a$(2) (24 July 2020). And statute prohibits "[a]ny deliberate or repeated unwelcome verbal comment or gesture of a sexual nature by any member of the armed forces or civilian employee of the Department of Defense." 10 U.S.C. 1561(e)(3). A disinterested observer could believe Col. Hudson's alleged conduct violated both these provisions.

The government argues we cannot consider the content of Dr. Smolinski's testimony, but rather must constrain our analysis to the four corners of his OSC complaints. Oral Arg. at 29:07–25, 30:28–53. The government cites *Hessami*, but that case merely held that the Board must accept as true a complainant's well-pleaded factual allegations in assessing jurisdiction notwithstanding agency evidence that undermines those allegations. *See* 979 F.3d at 1371. It did not hold that we must turn a blind eye to evidence specifically referenced in and supporting a complainant's allegations, like the April 2018 testimony. *See* J.A. 59–60, 65. We detect no error in considering this evidence for purposes of determining whether Dr. Smolinski nonfrivolously alleged that he made a protected disclosure.

The Board erred in holding Dr. Smolinski failed to allege sufficient factual matter to state a plausible claim that his testimony was protected under § 2302(b)(8). Accordingly, we reverse its dismissal and remand for the Board to consider that claim on the merits.

B

We next turn to Dr. Smolinski's § 2302(b)(9)(C) claim. That section prohibits retaliation for "cooperating with or disclosing information to [any] component responsible for internal investigation or review." The parties agree Dr. Smolinski alleged sufficient factual matter regarding his cooperation with the AR 15-6 investigation into Col. Hudson to state a plausible claim under § 2302(b)(9)(C). The Board never addressed this claim because it believed that "[e]ngaging in protected activity under section 2302(b)(9) is

not sufficient alone" to establish jurisdiction.  *Board Decision*, 2020 WL 7496634.  That belief, however, conflicts with the statute governing the Board's jurisdiction, which allows claims based on §§ 2302(b)(9)(A)(i) and (B)–(D).  5 U.S.C. § 1221(a).  We reverse the Board's dismissal and remand for consideration of this claim on the merits.

## III

Dr. Smolinski next argues the Board erred in dismissing his claims of retaliation for his OSC complaints.  The Board did not err.  To establish jurisdiction at the Board, an appellant must show he exhausted his remedies before OSC.  *Hessami*, 979 F.3d at 1367.  Dr. Smolinski never argued to OSC that the Army's alleged reprisals were because of his OSC complaints.  *See* J.A. 58–61 (original complaint); J.A. 63–66 (amended complaint).  He therefore failed to exhaust his remedies at OSC.  Accordingly, we affirm the Board's dismissal of these claims.

## IV

Lastly, Dr. Smolinski argues we should reassign this case to a different administrative judge.  He cites "the magnitude of the AJ's errors – dismissing the entirety of Appellant's appeal in a singlehandedly devastating manner." Appellant's Br. 25.  Reassignment is an extraordinary remedy that requires "a showing of 'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Bieber v. Dep't of Army*, 287 F.3d 1358, 1362 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  We see nothing in the administrative judge's opinion that suggests any bias, much less "deep-seated favoritism or antagonism."  We therefore deny Dr. Smolinski's reassignment request.

## CONCLUSION

Because Dr. Smolinski failed to allege sufficient factual matter to state a plausible claim that his wife's December 2017 patient complaint was a protected disclosure, and

because Dr. Smolinski did not exhaust his administrative remedies regarding his claim of retaliation for his OSC complaints, we affirm the Board's dismissal of those claims. With respect to Dr. Smolinski's claims alleging retaliation for his April 2018 testimony, however, we reverse the dismissal and remand for the Board to consider those claims on the merits.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Costs to Petitioner.