# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JULIA DOWNS,<br>              Appellant, | DOCKET NUMBER<br>DC-1221-21-0223-W-1 |
|     v. | |
| DEPARTMENT OF COMMERCE,<br>             Agency. | DATE: May 2, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>George M. Chuzi</u>, Esquire, Washington, D.C., for the appellant.

<u>Kristin Murrock</u>, Esquire, Suitland, Maryland, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant, a GS-15 Assistant Division Chief for Human Resources Policy, Talent Development, and Performance Management within the Human Resources Division of the agency's Census Bureau (CB), filed an appeal with the Board alleging that agency officials took several actions against her in retaliation for her disclosures to agency management, the agency's Office of Inspector General (IG or OIG), and the Office of Special Counsel (OSC). Initial Appeal File (IAF), Tab 1 at 1, 4, Tab 9 at 6-9. With her appeal, the appellant submitted a December 4, 2020 letter from OSC advising her that it had terminated its inquiry into her allegations. IAF, Tab 1 at 4-5.

The administrative judge issued an order setting forth the appellant's burden to establish the Board's jurisdiction over her IRA appeal. IAF, Tab 3. The appellant submitted an unsworn response. IAF, Tab 9 at 3. In her response, she provided details regarding her purported disclosures and activities. *Id.* at 6-14. Specifically, she identified them as follows:

1. In January 2020, [she] disclosed to [the Chief Human Capital Officer] and the IG [her first-level supervisor's] gross waste of $145,000 and abuse of authority regarding the performance management pilot project;

2. On May 19, 2020, [she] disclosed to the OSC [her second-level supervisor's] violation of law, rule, or regulation regarding Census'[s] implementation of COVID leave, presenting a substantial and specific danger to public health or safety; and

3. On August 11, 2020, [she] disclosed to [the CB Director, CB Deputy Director, and the appellant's first- and second-level supervisors] [her second-level supervisor's] gross mismanagement regarding Census'[s] implementation of COVID leave, presenting a substantial and specific danger to public health or safety.

*Id.* at 9-10.

The administrative judge issued an initial decision based on the written record, dismissing the appeal for lack of jurisdiction. IAF, Tab 15, Initial Decision (ID) at 1, 6-7. Specifically, after apprising the appellant of her

jurisdictional burdens and considering the parties submissions on the issue, he found that the appellant failed to prove that she exhausted her OSC remedy as to the disclosures and activities she raised on appeal. IAF, Tabs 3, 9-10; ID at 4-6.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency has responded to the appellant's petition. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Id.* If the appellant proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(1)-(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

The appellant proved exhaustion of her claimed protected activities and protected disclosures before OSC.

Under 5 U.S.C. § 1214(a)(3), an employee is required to "seek corrective action from [OSC] before seeking corrective action from the Board" through an IRA appeal. *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 6 (2014), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015). The substantive

requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The Board's jurisdiction over an IRA appeal is limited to those issues that have been previously raised with OSC, but appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* An appellant may demonstrate exhaustion through her initial OSC complaint, evidence that she amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011).

In this case, the administrative judge found the appellant's submissions insufficient to prove by preponderant evidence that she exhausted her administrative remedies before OSC. ID at 4-6. The administrative judge reasoned that her submissions lacked necessary details and failed to reflect "that the disclosures and personnel actions alleged in her [OSC] complaint match[ed] the allegations made to the Board."[2] *Id.*

> *The appellant exhausted the activity and disclosure she identified as "disclosure (1)."*

On review, the appellant argues that the allegations she made to OSC, as reflected in its December 4, 2020 letter, were sufficient to meet her exhaustion requirement as to disclosure (1). PFR File, Tab 1 at 10-14. We agree.

---

[2] The appellant argues on review that the administrative judge erred in finding that the jurisdictional response she submitted below was entitled to little probative weight. PFR File, Tab 1 at 19; ID at 4. We find it unnecessary to reach this argument. The appellant's jurisdictional response did not assert any additional details regarding the information she provided to OSC in connection with her reprisal claim. Rather, it provided further information regarding her underlying alleged protected disclosures and activities. IAF, Tab 9. Therefore, its probative weight is not relevant to the exhaustion issue, and any error by the administrative judge did not affect his analysis. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

As alleged in more detail below, the appellant alleged that her first-level supervisor unilaterally "de-scop[ed] a performance management pilot project" that had been approved by high-level agency officials, "thereby wasting approximately $145,000." IAF, Tab 9 at 6. She alleged that she disclosed these facts, which she argued she reasonably believed amounted to a gross waste of funds, to the Chief Human Capital Officer in January 2020. *Id.* She further asserted that she "made this same disclosure to the [agency's OIG]" around the same time. *Id.* The appellant's claim appears to align with her complaint, as identified by OSC, that agency officials retaliated against her for reporting to management, on an unidentified date, and to the agency's OIG "around February 2020," that "management . . . inappropriately ordered the de-scoping of a HR pilot project." IAF, Tab 1 at 4.

Under 5 U.S.C. § 2302(b)(9)(C), an employee engages in protected activity when she cooperates with, or discloses information to, an agency's OIG or OSC. Disclosures of information to an agency's OIG or to OSC are protected, regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law." *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. In the initial decision, the administrative judge did not consider whether the appellant was alleging that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when she disclosed the information regarding de-scoping to the OIG. We conclude that this was error and find that the appellant exhausted her administrative remedies with OSC regarding this claim.

Although the appellant has not provided a copy of her OSC complaint, the OSC letter identifies her claim that "around February 2020," she made a disclosure to the agency's OIG regarding the de-scoping of an HR pilot project that caused the agency to take certain personnel actions against her. IAF, Tab 1 at 4. As previously noted, disclosures to the OIG are protected without regard for the content of such disclosures. *Fisher*, 2023 MSPB 11, ¶ 8. Accordingly, we

find that she proved by preponderant evidence that she exhausted her administrative remedy regarding this activity.

We also find that the appellant exhausted with OSC her claim that she made this same de-scoping disclosure to management. We note that, as the administrative judge observed, the appellant has not claimed that she advised OSC as to whom in management she made her de-scoping disclosure or how her disclosure "led to each personnel action." IAF, Tab 1 at 4; ID at 5.

Nonetheless, the appellant, who was pro se below, submitted the December 4, 2020 OSC letter identifying an allegation of retaliation for reporting to management a gross waste of funds and an abuse of authority in connection with de-scoping an HR pilot project. IAF, Tab 1 at 4. We find that these allegations to OSC, apparently made without the benefit of representation, provided OSC with a sufficient basis to pursue an investigation, and thus the appellant established that she exhausted her remedies as to this disclosure.

> *The appellant exhausted her protected activity of making a disclosure to OSC, which she identified as "disclosure (2)."*

The appellant argues on review that the disclosure she made to OSC, as reflected in its December 4, 2020 letter, was sufficient to meet her exhaustion requirement as to disclosure (2). PFR File, Tab 1 at 10-14. The administrative judge found that she failed to exhaust disclosure (2) with OSC, reasoning that she failed to mention to whom the disclosure was made, which personnel actions occurred as a result, or who was responsible for taking the actions. ID at 5-6. We disagree with the administrative judge.

As previously indicated, disclosures to OSC are protected activity under 5 U.S.C. § 2302(b)(9)(C). *Fisher*, 2023 MSPB 11, ¶ 8. Further, filing an OSC complaint seeking to remedy reprisal for protected whistleblowing is a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), and thus within the Board's IRA jurisdiction. *See Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 10 (2016) (explaining that a claim of retaliation for filing a prior Board appeal that included

a claim of whistleblower reprisal was a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i)); *see also Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (recognizing that the WPEA expanded the Board's IRA jurisdiction to include reprisal for activity under 5 U.S.C. § 2302(b)(9)(A) (i)). Here, the appellant identified in her jurisdictional response that, in May 2020, she made disclosure (2) to OSC. IAF, Tab 9 at 7. In particular, she alleged that she disclosed to OSC "that [CB] violated [agency] Human Resources Bulletin #243 by, initially, refusing to implement the regulation and then by adding Census-specific stipulations unauthorized by the Bulletin for employees to qualify for COVID leave." *Id.* The OSC closure letter similarly identifies that "[she] alleged that management failed to properly offer CB employees leave in connection with the coronavirus pandemic." IAF, Tab 1 at 4. Although the OSC letter does not specify when she disclosed this information to OSC, it indicates that she filed her OSC complaint in May 2020. Thus, we find that the OSC letter contains sufficient information to prove that she brought this claim before OSC. Accordingly, we find that she showed by preponderant evidence that she exhausted her administrative remedy regarding her claim of reprisal for filing an OSC complaint seeking to remedy whistleblower reprisal or disclosing information to OSC in May 2020.

*The appellant exhausted with OSC what she identified as "disclosure (3)."*

On review, the appellant also argues that the information she provided to OSC, as reflected in its December 4, 2020 letter, was sufficient to meet her exhaustion requirement as to disclosure (3). PFR File, Tab 1 at 10-15. We agree. The administrative judge found that she could not meet the exhaustion requirement because she alleged that she made this disclosure to the agency after she filed her OSC complaint, and there was no evidence of an amendment to her OSC complaint in the record. ID at 6. However, an appellant may prove she exhausted any amendments to her complaint by presenting OSC's determination

letter or other letters from OSC referencing the amended allegations. *Mason*, 116 M.S.P.R. 135, ¶ 8. As such, to the extent the administrative judge found that she failed to prove exhaustion because the disclosure occurred after she filed her complaint in May 2020, this was error. ID at 6.

Below, the appellant alleged that, in August 2020, she reported to agency leadership, with a copy to her first- and second-level supervisors, her belief "that adding two pages of Census-specific stipulations for employee eligibility for the COVID leave benefit constituted gross mismanagement" and a substantial and specific danger to public health or safety. IAF, Tab 9 at 8, 10. This appears to align with the appellant's claim, identified in the December 4, 2020 OSC letter, that she disclosed to the agency that "management failed to properly offer CB employees leave in connection with the coronavirus pandemic [and] reviewed employee personnel documents to avoid providing that leave." IAF, Tab 1 at 4.

We note that OSC's letter does not indicate that the appellant advised OSC as to when she purportedly made this disclosure or to whom in management it was made. *Id.* Further, the specific nature of the wrongdoing appears to have changed from her OSC complaint to her jurisdictional response to the Board. While she alleged to OSC that CB failed to offer COVID-related leave, she alleges below that CB added requirements that created a stumbling block for use of that leave. IAF, Tab 1 at 4, Tab 9 at 8. Nonetheless, applying the reasoning from *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001), and *Tuten v. Department of Justice*, 104 M.S.P.R. 271, ¶ 6 (2006), we conclude that the appellant's allegation to OSC identified her core claim that she disclosed to the agency that CB was interfering with employees' ability to take what she identified as COVID leave.

The appellant made nonfrivolous allegations that she engaged in protected activities.

We have found that the appellant exhausted with OSC all of the following alleged protected disclosures and activities: (1) her activity of disclosing

information to the agency's OIG regarding the de-scoping of a pilot project and her disclosure to management of the same information; (2) her activity of disclosing to OSC information regarding the agency's implementation of COVID leave; and (3) her disclosure to CB managers and supervisors regarding CB interfering with employees' use of COVID-related leave. As to the exhausted activities and disclosures, the next jurisdictional inquiry is whether the appellant nonfrivolously alleged that they were protected under the WPEA. *See Salerno*, 123 M.S.P.R. 230, ¶ 5.

The U.S. Court of Appeals for the Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face."[3] *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of affording the appellant a hearing. *Grimes v. Department of the Navy*, 96 M.S.P.R. 595, ¶ 12 (2004). Whether the appellant's allegations can be proven on the merits is not part of the jurisdictional inquiry. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 12 (2010).

For the reasons discussed above, we find that the appellant nonfrivolously alleged that she engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when she made disclosures to the OIG and OSC because such activities fall within the protective umbrella of the WPEA without regard to their content. IAF, Tab 1 at 4, Tab 9 at 6-7, 9; *see Fisher*, 2023 MSPB 11, ¶ 8.

We now consider whether the appellant made a nonfrivolous allegation that her exhausted disclosures to agency management are protected disclosures under 5 U.S.C. § 2302(b)(8). A nonfrivolous allegation of a protected disclosure is an

---

[3] Although Board regulations specify that nonfrivolous allegations are generally sworn, 5 C.F.R. § 1201.4(s), the Board has declined to impose such a requirement, *Edem v. Department of Commerce*, 64 M.S.P.R. 501, 505-06 (1994). Therefore, we have considered the appellant's unsworn jurisdictional response.

allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.* (citing *Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999)). The disclosures must be specific and detailed, not vague allegations of wrongdoing. *Id.*

With respect to her alleged disclosure to management, which she identified under "disclosure (1)," i.e., that her first-level supervisor engaged in a gross waste of funds and abused her authority by "unilaterally de-scoping" a pilot project, we find that the appellant failed to nonfrivolously allege that she disclosed what a reasonable person in her position would believe was wrongdoing within the scope of 5 U.S.C. § 2302(b)(8). IAF, Tab 9 at 6. A "gross waste of funds" is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶ 8 (1998). An abuse of authority occurs when an agency's exercise of its authority is inconsistent with its mission. *See Smolinski v. Merit Systems Protection Board*, 23 F. 4th 1345, 1352 (Fed. Cir. 2022).

The appellant specified that "approximately $145,000" was wasted when her first-level supervisor "unilaterally de-scop[ed] a performance management pilot project" approved by higher-level CB management. IAF, Tab 9 at 6, 10. However, she did not explain the basis for her belief that it was a gross waste of funds or how it was wasteful, i.e., significantly out of proportion to the benefits

reasonably expected to accrue. *Id.* She also did not indicate what "de-scoping" is, why it was inappropriate, or the basis for her belief that it was an abuse of authority besides identifying that the pilot project was originally approved by high-level agency officials. *Id.* She did not claim the de-scoping was inconsistent with the agency's mission or that her supervisor lacked the authority to de-scope the project. Therefore, we find that the alleged disclosure lacks the specificity necessary for the Board to find that she made a nonfrivolous allegation of a protected disclosure. *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶¶ 7, 9 (2016) (finding that an appellant's vague allegations that he reported to the agency gross mismanagement and a gross waste of funds without further details regarding the nature of his alleged protected disclosures did not satisfy the Board's nonfrivolous allegation standard).

We turn next to disclosure (3). The appellant alleged below that, on August 11, 2020, she advised CB managers and supervisors via email of her belief that CB acted improperly by adding CB-specific stipulations to employees' use of what she termed "COVID leave."[4] IAF, Tab 9 at 8. Both the appellant and

---

[4] The appellant did not provide a copy of her email. However, the agency submitted an August 2020 email exchange between the appellant and her supervisor regarding the appellant's request for paid time for dependent care and an agency policy concerning this benefit, identified as Human Resources (HR) Bulletin #243. IAF, Tab 10 at 19-21, 23-25. We have considered this email exchange and policy to the extent that they support a finding that the appellant nonfrivolously alleged that she made a protected disclosure. *See Smolinski*, 23 F. 4th at 1352 (holding that it is proper to consider record evidence referenced by an appellant for purposes of determining whether an individual nonfrivolously alleged that he made a protected disclosure). According to the August 2020 exchange with her supervisor, provided by the agency, on August 13, 2020, her supervisor advised her that she could not "approve [the appellant's] leave request for 4 hours of paid excused absence for dependent care." IAF, Tab 10 at 24. Specifically, she advised that CB policy guidance required employees to use other categories of leave entitlements prior to being granted paid excused absences and requested that the appellant resubmit her leave request in accordance with that guidance. *Id.* On August 14, 2020, the appellant responded, stating, among other things, that she "executed the unlawful order" to change her leave request and that "[she] know[s] that this decision [requiring her to first exhaust] pay (e.g.[,] [leave under the Emergency Paid Sick Leave Act provision of the Families First Coronavirus Response Act] 2/3 pay for childcare) and benefits (e.g.[,] using personal leave or compensatory or travel time)

the agency referred, at times, to the benefit in question as "leave." IAF, Tab 10 at 23-25. However, it is clear from the record that the benefit was not leave, but rather "up to 20 hours of excused absence per pay period" to care for dependent family members if their school or care was otherwise "not available due to the pandemic." *Id.* at 20, 23-25.

The appellant objected to the agency's requirement that she first exhaust accrued credit hours or other available leave before receiving paid time for dependent care. IAF, Tab 9 at 8, 10. She alleged that this requirement was "gross mismanagement . . . presenting a substantial and specific danger to public health or safety." *Id.* Gross mismanagement is a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008). The statutory protections for whistleblowers are not a weapon in arguments over policy or a shield for insubordinate conduct. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015). General philosophical or policy disagreements with agency decisions that "lawfully exercise discretionary authority" are not protected unless the appellant has a reasonable belief that the disclosed information separately evidences one of the categories of wrongdoing listed in section 2302(b)(8)(A). 5 U.S.C. § 2302(a)(2)(D); *Webb*, 122 M.S.P.R. 248, ¶ 8.

The appellant here alleged that the CB-specific stipulations to the agency's provision of paid excused absences connected with the coronavirus pandemic "erod[ed] [CB] employees' trust in the honesty and transparency of management, thereby creating a substantial risk of a significant, adverse impact on the [a]gency's ability to execute its mission." IAF, Tab 9 at 8. This vague assertion did not explain how the agency's action created a substantial risk of a significant adverse impact upon its ability to accomplish its mission. Nor did the appellant

_____

is contrary to Merit System Principles in accordance with 5 USC Section 2302(b)(12) and constitutes a Prohibited Personnel Practice." *Id.* at 23-24.

provide sufficient information for us to infer such a finding. Rather, her disclosure appears to challenge the agency's conditions for employees' use of paid excused absences, which amounts to a disagreement with a lawful exercise of discretionary authority. *See Webb*, 122 M.S.P.R. 248, ¶¶ 2, 8-10 (finding that the appellant's position paper disagreeing with the agency's lawful decision regarding how to carry out a required restructuring was a policy disagreement). Therefore, we conclude that the appellant failed to nonfrivolously allege that she reasonably believed that she disclosed gross mismanagement.

The appellant also alleged that disclosure (3) was protected because it revealed a substantial and specific danger to public health or safety. IAF, Tab 9 at 10. We are not persuaded. In determining whether a disclosure evidenced a substantial and specific danger to public health or safety, it is appropriate for the Board to consider factors such as the likelihood of harm resulting from the danger. *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008). A disclosure of a speculative danger is insufficient. *Id.*; *Miller v Department of Homeland Security*, 111 M.S.P.R. 312, ¶ 6 (2009).

Here, the appellant alleged that the CB-specific stipulations created an increased risk of COVID exposure to employees and their children when employees could not otherwise take leave. IAF, Tab 9 at 10 n.5. The problem with this claim is that, as alleged by the appellant, the agency made excused absences available to precisely those employees who lacked leave or other options. Thus, no reasonable person in the appellant's position could conclude that the CB-specific stipulations would prevent employees without leave from using the paid excused absence benefit for dependent care. Nor has she identified any other reasonable basis to believe that the agency's limitations on this benefit increased potential COVID exposure.

To the extent that the appellant alleged that disclosure (3) is protected as an allegation of a violation of a law, rule, or regulation, we are not persuaded. She failed to identify or explain how the stipulations ran afoul of any law, rule, or

regulation. IAF, Tab 9 at 8. The Office of Personnel Management explained in a fact sheet that, during the COVID-19 pandemic, agencies had multiple options for telework-eligible employees with caregiving responsibilities, including the "broad management authority to grant excused absences with pay." *See Fact Sheet - Options for Telework-Eligible Employees with Caregiving Responsibilities*, https://www.opm.gov/policy-data-oversight/covid-19/options-for-telework-eligible-employees-with-caregiving-responsibilities/ (last visited May 1, 2024). However, this fact sheet advised agencies to grant such paid absences "sparingly" and did not preclude agencies from exercising discretion in granting this leave. *Id.*

Further, the requirement that employees first exhaust other leave and use credit hours does not violate the agency's written policy with regards to the granting of such paid absences. IAF, Tab 10 at 19-21. The policy itself states that paid excused absences are not a substitute for the use of sick leave when appropriate, and that "flexible alternative schedule[s]" should be considered before awarding paid excused absences. *Id.* at 20. Thus, we find that a disinterested person with knowledge of the essential facts would not believe that the CB-specific stipulations violated any rule, law, or violation. Further, given the nature of her position "as the manager and subject matter expert for Human Resources Policy and Performance Management," we find that the appellant could not reasonably believe that the CB-specific stipulations evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). IAF, Tab 9 at 9; *see Webb*, 122 M.S.P.R. 248, ¶ 12 n.5 (finding an appellant's involvement with, and understanding of, the subject matter may go to whether he had a reasonable belief that he disclosed a violation of a law, rule, or regulation). Thus, we find that the appellant failed to make a nonfrivolous allegation that she made a protected disclosure.

<u>The appellant nonfrivolously alleged that the agency subjected her to several covered personnel actions.</u>

The appellant argues generally that her allegations are nonfrivolous but does not present specific arguments regarding the claimed personnel actions. PFR File, Tab 1 at 20-24. The administrative judge did not reach the issue of whether the appellant made a nonfrivolous allegation that the agency took personnel actions against her. Therefore, we consider in the first instance here those personnel actions alleged by the appellant in her jurisdictional response. IAF, Tab 9 at 10.

The appellant alleged below that the agency took the following retaliatory personnel actions against her between February and October 2020. According to the appellant, in February 2020, the agency "significantly diminished her duties" in retaliation for her the de-scoping disclosure she made to the agency's OIG. *Id.* at 6-7, 10. On August 13, 2020, her first-level supervisor rescinded her prior approval of the appellant's request for 20 hours of paid leave in retaliation for her disclosure to CB managers and supervisors that CB was interfering in employees' use of COVID leave. *Id.* at 8-9. On September 1, 2020, her second-level supervisor notified her that, effective September 7, 2020, she would be involuntarily detailed to a nonsupervisory position in retaliation for this same disclosure. *Id.* at 8. She also alleged that, on October 7, 2020, her first- and second-level supervisors rated her performance appraisal for fiscal year (FY) 2020 as lower than she deserved in retaliation for her disclosure to the agency's OIG and her disclosure to CB regarding COVID leave. *Id.* at 9-10. Because we have found that the appellant failed to nonfrivolously allege that her August 2020 disclosure was protected, we need not consider further the alleged August 13, 2020 denial of leave, or the September 2020 detail.

We next turn to the appellant's claim that the agency diminished her duties in February 2020. A diminishment in duties is not an enumerated personnel action under the WPEA. *See* 5 U.S.C. § 2302(a)(2)(A). However, a significant

change in working conditions and duties is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii). In determining whether an appellant has suffered a significant change in her working conditions, the Board considers only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16.

The appellant alleged below that her first-level supervisor did not appoint her to a COVID taskforce. IAF, Tab 9 at 6-7. She also claimed that this supervisor "excluded [her] from all matters related to Human Resources Policy and significant parts of the Human Resources Talent Development and Performance Management portfolio," which "removed her ability to execute more than half of her portfolio." *Id.* We find that these allegations constitute a nonfrivolous allegation of a significant change in duties or responsibilities. *See Skarada*, 2022 MSPB 17, ¶¶ 17-18 (finding that the appellant nonfrivolously alleged that the agency subjected him to a significant change in duties, responsibilities, or working conditions when he alleged that, among other actions, his chain of command directed him to stop attending leadership meetings and performing certain extra duties).

The appellant has also nonfrivolously alleged that her FY 2020 reduced performance appraisal constituted a personnel action. IAF, Tab 9 at 9-10, Tab 10 at 29-39. A performance evaluation is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii).[5]

The appellant made a nonfrivolous allegation that one protected activity was a contributing factor in two personnel actions.

The final jurisdictional inquiry is whether the appellant has nonfrivolously alleged that her protected activity or disclosure was a contributing factor in the

_____

[5] The appellant exhausted her performance evaluation and hostile work environment claims before OSC. IAF, Tab 1 at 4.

agency's decision to take, fail to take, or threaten to take or fail to take a personnel action. *Salerno*, 123 M.S.P.R. 230, ¶ 5; *see* 5 U.S.C. §§ 1221(e)(1), 2302(b)(9). We find that the appellant met her jurisdictional burden as to her claim that her OIG disclosure contributed to a hostile work environment in February 2020 and an undeserved evaluation of her performance for FY 2020.

To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, the appellant only need raise a nonfrivolous allegation that the fact of, or the content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Salerno*, 123 M.S.P.R. 230, ¶ 13. One way to establish contributing factor is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the timing component of the knowledge/timing test. *Id.*, ¶ 14.

As to disclosure (1), we have found that the appellant established that she exhausted her OSC remedy and nonfrivolously alleged that she disclosed the de-scoping of a pilot project to the agency's OIG in January or February 2020. IAF, Tab 1 at 4, Tab 9 at 6-7, 10. The appellant also nonfrivolously alleged that, in retaliation for this protected activity, her supervisor significantly changed her working conditions and duties on February 28, 2020, and her first- and second-level supervisors issued her an undeserved performance review for FY 2020 on October 7, 2020. IAF, Tab 9 at 6-7, 9. According to the appellant, she advised her first-level supervisor of her intention to make this OIG disclosure. *Id.* at 6. Although she does not specify when she so informed her supervisor, based on her assertions below, we infer that she is alleging she

conveyed her intent to her supervisor in January or February 2020. *Id.* We conclude that she met her burden to nonfrivolously allege that her protected OIG activity was a contributing factor in her first-level supervisor's decision to change her working conditions and duties less than 2 months later, and issue her an allegedly undeserved FY 2020 performance review approximately 9 months later. Therefore, we find that the appellant met her jurisdictional burden to prove contributing factor under the knowledge/timing test.

As to disclosure (2), we have found that the appellant met her burden to prove exhaustion and that she made nonfrivolous allegations that, in May 2020, she engaged in protected activity by making a disclosure to OSC regarding the agency's implementation of COVID leave. IAF, Tab 1 at 4, Tab 9 at 10. The appellant speculated below that certain agency officials, including her second-level supervisor, may have learned she was the source of this disclosure after OSC referred it to the agency's OIG for investigation. IAF, Tab 9 at 7. However, she did not identify below, and does not identify on review, what personnel action or actions resulted from her OSC disclosure. *Id.* The Board has found that an appellant must make specific and detailed allegations; vague, conclusory, unsupported, and pro forma allegations of do not meet the nonfrivolous pleading standard. *Clark v. U.S. Postal Service*, 123 M.S.P.R. 466, ¶ 7 (2016), *aff'd per curiam*, 679 F. App'x 1006 (Fed. Cir. 2017), *and overruled on other grounds by Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 20 n.11. Because critical allegations as to the retaliatory actions that stemmed from this protected activity are missing, we cannot make a determination as to contributing factor. Put another way, we have no allegations that we may assume are true for purposes of making a jurisdictional determination. *See Hessami*, 979 F.3d at 1369. Therefore, we find that the Board lacks jurisdiction over the appellant's alleged OSC disclosure.

In sum, we find that the Board has jurisdiction over the appellant's claim that, in reprisal for her protected activity of making a disclosure to the agency's

OIG in January or February 2020, the agency subjected her to a hostile work environment in February 2020, and issued her a less-than-deserved performance appraisal for FY 2020. Therefore, she is entitled to a hearing on the merits of these claims.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.